**Doris HEUTEL,**
**Appellant/Cross–Respondent,**

v.

**Lee B. HEUTEL,**
**Respondent/Cross–Appellant.**

**Nos. 57094 & 57119.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 18, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 23, 1991.

Application to Transfer Denied
March 5, 1991.

Shaw, Howlett & Knappenberger, Charles M. Shaw, for appellant/cross-respondent.

Alan J. Agathen, Clayton, for respondent/cross-appellant.

PUDLOWSKI, Judge.

On April 21, 1989, the St. Louis County Circuit Court dissolved the marriage of Lee B. Heutel (hereinafter husband) and Doris J. Heutel (hereinafter wife) following a dissolution hearing.

Both husband and wife appeal. Wife raises four points on appeal. Wife contends the court erred in (1) not ordering husband to pay all of her attorneys' fees; (2) not admitting the contents of Exhibit 74, a contract executed in contemplation of divorce; (3) awarding an insubstantial amount of child support and in ordering it to be paid directly to the minor child; and (4) failing to properly value property in making its distribution. Husband raises one point on appeal. Husband contends the trial court erred in awarding $3,000 a month in maintenance.

The court awarded wife primary custody of the minor child and ordered husband to pay $1,000 a month in child support. After listing in detail the parties' separate property, the court awarded to wife the marital home; a residential rental property; a vacation home; a home in Mexico, Missouri; four automobiles; several checking accounts; furniture in the marital home; three insurance policies; an IRA account; and any proceeds from seven pending suits. Wife received periodic maintenance in the amount of $3,000 a month. The court also ordered husband to pay wife's attorneys' fees in the amount of $26,000.

Husband received two residential rental properties; property in Union, Missouri; two automobiles; several bank accounts; several insurance policies; two Keogh plans; an IRA account; Air Force Reserve retirement credits; his 25% partnership in Macon Medical Center; and his 25% interest in Maplewood Rental Associates. Both husband and wife appeal.

Husband and Wife married April 16, 1954. Wife was nineteen years old at the time of marriage and working as a telephone operator. Husband was twenty-three years old and attending his last year of veterinary school. Husband and wife had two children: LeAnn, emancipated at the time of trial, and Lance, age seventeen at the time of trial.

After completing his study of veterinary medicine, husband joined the Air Force. After military service husband entered medical school. Both husband and wife worked while he attended medical school.

In 1964 husband joined the Macon Medical Clinic (hereinafter Clinic). At the time of dissolution, husband was a partner at the Clinic, holding a 25% interest. Husband also remained active in the Air Force Reserves. Husband's income from the Clinic was $12,000 a month. His reserve duty income was $576 a month. Husband worked approximately seventy to seventy-five hours a week at the time of trial.

In the late 1970's or early 1980, wife started the Heutel Institute, a hypnosis and counseling service. Wife's statement of income and expenses showed income of $400 a month from the Heutel Institute. Wife's 1984 tax return showed gross income of $34,368 from the Heutel Institute. Her 1985 tax return showed gross income in excess of $26,000. Wife testified that husband had prepared the tax returns and that she signed them without knowledge of their contents. Husband testified he derived the tax return figures from wife's records and that they were accurate. Wife maintained that her income had diminished because she could not devote adequate time to it because of her involvement in legal actions and added responsibilities for her home and child after separation.

Husband and wife testified as to the value of numerous other properties and to the amount of debt they had incurred during the marriage. However, the largest single obligation was for tax years 1986–88, the period following separation and

when the parties filed individual tax returns. Husband last made his quarterly payments on taxes (as a self-employed individual) in 1981. Husband's estimate of his monthly expenses was $14,651.54 if he paid back taxes at a scheduled rate of $6,000 per month.

Both parties offered evidence of misconduct. Husband admitted that he signed wife's name on a number of documents pertaining to the acquisition of farm property titled in joint names.

Husband began a social liaison with a former patient in December 1985 or Spring 1986. Husband and the former patient testified there was no intimacy in their relationship prior to husband and wife's separation. During the course of the marriage, husband struck wife on several occasions. Husband recalled striking her on two occasions more than sixteen years prior to the trial.

Wife also contended at trial that husband purposely dissipated farm assets. Husband bought farm property to generate more income. Husband testified that flooding caused a loss of crops four consecutive years. In 1985 some of the property was in default and was sold in a foreclosure sale when husband could not afford to make the payments. Another piece of farmland was sold for a profit of $70,000. Most of that profit went toward payment of existing obligations for taxes and their daughter's education. Husband calculated their total loss from the farm transactions, taking into account the tax benefits, to be $68,678.14. He testified that he did not intend to dissipate assets.

Wife went out socially without husband several nights a week. She was accompanied on two of these occasions by a young man identified as "Paul." Wife testified she could not recall the last decade in which she and husband had been intimate. Husband testified wife refused to attend social functions associated with his career and was not responsive when he expressed interest in resuming sexual relations.

Husband testified that their relationship worsened in 1983 when wife met James Jennings (hereinafter Jennings), a maintenance man she hired to make repairs and improvements on the vacation cabin. Wife testified she never slept with Jennings. However, Jennings became her confidant and her ally in marital confrontations between husband and wife.

In June 1985, wife suggested that they agree merely to have a "financial arrangement and partnership" and that each do "what they want." On October 15, 1985, husband left the marital home. On October 30, 1985, wife filed a petition for dissolution of marriage. She amended the petition in June 1988.

After numerous continuances, the trial court entered its decree of dissolution on April 21, 1989. After the dissolution hearing the trial court found *inter alia,*

12. In consideration of Petitioner's (Wife's) age, lack of education, experience, employment income and reasonable expenses, the Court finds that the Petitioner is without adequate means to support herself in any semblance of the style of life acquired and maintained throughout the marriage. Respondent is found to be of adequate means to support himself and to provide support to Petitioner.

. . . . .

15. During the course of the marriage, the parties acquired a fifty percent (50%) interest in certain farm properties. Petitioner meticulously traced numerous transactions and showed that Respondent signed Petitioner's name to various joint promissory notes and deeds of trust relating to these farms, without her knowledge. However, Respondent also put these farms in joint names without his wife's specific knowledge as to each transaction.

The Court finds that Respondent lost money on the various farm transactions but did not intentionally waste, squander or dissipate assets. The Court further finds that the parties each had complaints against the other and that neither one's complaints were so great as to outweigh any of the others. Therefore, the Court concludes that conduct should not be a factor to be considered by the

Court to the extent that it favors either party.

.    .    .    .    .

17. Petitioner's attorney fees over and above those awarded P.D.L., reasonably chargeable to Respondent in consideration of the respective financial conditions of the parties and all other relevant factors are Twenty–Six Thousand Dollars ($26,000).

Husband was ordered to pay wife $3,000 a month for periodic modifiable maintenance. The court also made the following child support provision:

8. Respondent [Husband] is ordered to pay to Petitioner as and for the support of the minor child the sum of One Thousand Dollars ($1,000) per month for Lance B. Heutel. The child support shall be paid directly to the minor child if he attends an institution of vocational or higher education.

Further, the court ordered husband to pay $20,000 of wife's attorney's fees directly to Joseph Burcke, her attorney at trial, and $6,000 in attorney's fees to John Steiner, an attorney who represented her earlier.

Because this matter was tried to the court, this Court must sustain the judgment of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. App.1976). Where there is a conflict in the evidence, the trial court has the prerogative to determine the credibility of witnesses. *Lehmann v. Lehmann,* 750 S.W.2d 724, 725 (Mo.App.1988). The trial court decides the weight and value to be given to the testimony of any witness. *Wynn v. Wynn,* 738 S.W.2d 915, 918 (Mo.App.1987). This Court defers to the trial court's view of the facts even if evidence could support a different conclusion. *Id.*

Wife first contends the trial court erred in not ordering husband to pay all her attorneys' fees because husband has superior resources and because husband's misconduct in the marriage contributed significantly to the need for litigation. Wife contends husband should have been ordered to pay her previous attorney $23,481.23 and her trial attorney $31,381.37 or $54,862.60, more than twice the amount actually awarded. She asserts the amount is not unreasonable considering the complexity of the divorce and husband's superior ability to pay, especially in light of husband's misconduct in dissipating marital funds.

Section 452.355(1) provides that the court "after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under §§ 452.300 to 452.415 and for attorney's fees...." V.A.M.S. § 452.355(1) (Supp.1989). The court is an expert on the reasonableness of attorney's fees. *Raines v. Raines,* 583 S.W.2d 564 (Mo.App.1979). The court is neither bound by the number of hours counsel worked nor bound by counsel's hourly charges. *Id.* An abuse of discretion is a prerequisite to overturning an award of attorney's fees. *Hoffmann v. Hoffmann,* 676 S.W.2d 817 (Mo. banc 1984).

■ None of wife's arguments demonstrate an abuse of discretion on the part of the trial court. The court made a specific finding that $26,000 of wife's attorneys' fees was *"reasonably* chargeable to respondent in consideration of the respective financial conditions of the parties and all other relevant factors." The court heard evidence of hours expended and hourly rates presented by the attorneys. Mr. Burcke testified that his fee "comes totally from whatever the court awards from Dr. Heutel. To the extent he makes no award, I receive no fee." Mr. Steiner said that in the event the court did not award his entire fee, he would discuss the matter with wife. There is no evidence in the record wife will be responsible for any attorney's fees. There was evidence of inaccurate record keeping, duplication of efforts, and hours of research relevant to other actions wife had pending against husband. Wife's contention that husband's misconduct warranted an award of all her attorney's fees is unfounded. The court specifically found

that there had been no intentional dissipation of funds. In light of all the evidence, the court determined a reasonable amount of attorneys' fees. The court did not abuse its discretion. Point I is denied.

■ In her second point on appeal, wife contends the trial court erred in not admitting the contents of Exhibit 74 in that it was a valid contract executed in contemplation of divorce which settled many of the issues which were presented at trial. Both husband and wife testified about Exhibit 74, but the court excluded Exhibit 74 on the grounds that it was an offer of settlement. Wife has not preserved this point for review. An objection which results in the exclusion of evidence cannot be considered unless the record reflects what the evidence would have been. *Provident Life and Accident Ins. Co. v. Buerge,* 703 S.W.2d 590 (Mo.App.1986). An offer of proof is ordinarily necessary to preserve the record for appeal. *Elliott v. Richter,* 496 S.W.2d 860 (Mo.1973).

Wife's attorney brought up Exhibit 74 twice during the hearing. During his direct examination of husband, he attempted to read from the document as proof of an agreement. Husband's attorney objected to the questioning. The trial court sustained the objection. He again raised the issue of Exhibit 74 during his direct examination of wife. The following transpired,

MR. BURCKE: Your Honor, this is not—It hasn't been offered yet, but I will ask ultimately that it be offered. But it's not offered for the purposes of proving up a settlement agreement. It goes towards the issues of misconduct and the deception which Dr. Huetel hoisted on his wife at that time.

THE COURT: You mean the alleged deception of the fact that he was coming back?

MR. BURCKE: That's correct.

THE COURT: To that extent, you may proceed.

The only portion of Exhibit 74 presented to the trial court was a handwritten portion at the bottom that had no substantive provisions. Wife's counsel offered Exhibit 77 as severed from Exhibit 74. The trial court ruled on both, admitting Exhibit 77 and refusing Exhibit 74. Wife made no objection to the ruling and did not make an offer of proof as to the document's contents. Furthermore, wife never offered the document at trial as a contract of settlement, the theory wife is asserting now for the first time. Wife's second point is denied.

■ In Point III on appeal, wife contends the court erred in both determining the amount and fixing the method of child support payments. The court awarded $1,000 per month in child support, to be "paid directly to the minor child if he attended an institution of vocational or higher education." V.A.M.S. § 452.340(5) (Supp.1989) provides:

5 .... If the child is attending such a school [institution of vocational or higher education], the child or obligated parent may petition the court to amend the order to direct the obligated parent to make the payments directly to the child.

Wife contends the trial court did not have jurisdiction to award child support directly to the child until he reached the age of eighteen. There is no support for such a contention in the statute. The statute refers to amending an existing order, not fashioning the court's original order.

■ A trial court has broad discretion and flexibility in fashioning child support payments. *Toomey v. Toomey,* 636 S.W.2d 313, 315 (Mo. banc 1982); *Echele v. Echele,* 782 S.W.2d 430 (Mo.App.1989). While the trial court has broad discretion and flexibility, the order must be sufficiently certain without requiring external proof or another hearing for enforcement. *Tepper v. Tepper,* 763 S.W.2d 726, 727 (Mo.App.1989); *Pettigrew v. Pettigrew,* 619 S.W.2d 364, 365 (Mo.App.1981). The Supreme Court in *Toomey v. Toomey,* 636 S.W.2d 313 (Mo. banc 1982), held that uncertain or indefinite orders that may be made certain by a motion and hearing are enforceable after such a motion and hearing. *Toomey,* 636 S.W.2d at 316. However, a decree that is so amorphous and uncertain that it requires "a subsequent hearing to determine its meaning and which involves discretion" is void. *Echele,* 782 S.W.2d at 436.

Here the method of payment, not the amount, is uncertain. The trial court simply states:

8 .... The child support [$1,000 per month] shall be paid directly to the minor child if he attends an institution of vocational or higher education.

The order does not specify what proof is needed to trigger the change in support recipient, whether full-time student status is required, or what the duration of the award will be. The second sentence of paragraph eight of the trial court's order is unenforceable. The order is reversed and remanded to make that portion of the order definite.

■ Wife also contends the amount of the award was insufficient. The trial court has broad discretion in setting awards of child support. *Mueller v. Mueller*, 782 S.W.2d 445, 447 (Mo.App.1990). Absent a manifest abuse of discretion, this Court will not substitute its judgment for that of the trial court. *Id.* While it is true the trial court must consider factors such as the standard of living the child would have enjoyed had the marriage continued and the educational needs of the child, the court must also consider the financial resources and needs of the parents. Husband's ongoing debt burden was a factor to be considered. Under the circumstances, there was no abuse of discretion.

■ Finally, wife contends the trial court erred in its division of property in that it did not properly value property. Wife complains that the trial court accepted the valuations of husband's expert, that the trial court subtracted a $40,537.68 encumbrance from husband's Keogh plan at Pioneer Bank from the total value for the plan; that the court did not take into account the value of assets of the Macon Medical partnership or value the good will of the partnership; that the trial court accepted husband's testimony as to tax liability; and that the trial court did not provide specific findings as to the basis of its valuations. In the event this Court reverses and remands for a new property division, wife also requests a redetermination of the maintenance award.

Husband's evidence concerning property value was based on the testimony of Ted Horowitz, a real estate appraiser, who examined the properties. Wife's evidence concerning value was her own opinion. A trial court is free to accept the valuations placed on marital property by one party's expert witness. *Riaz v. Riaz*, 789 S.W.2d 224, 228–29 (Mo.App.1990).

■ The Keogh plan at Pioneer Bank had an original value of $56,430.25. Husband had taken out a loan against it to pay taxes, leaving equity of $15,892.67. Wife cites *Levis v. Levis*, 713 S.W.2d 561 (Mo. App.1986) for the proposition that the encumbrance should not be subtracted to determine the value of the plan. *Levis* is inapposite. In that case a corporation owed money to the couple and the debt owed to them was an asset. The trial court's valuation of the Keogh plan is supported by the evidence. *See Preston v. Preston*, 767 S.W.2d 618, 620 (Mo.App. 1989) (similar valuation problem involving certificate of deposit).

■ Wife also contends the valuation of the medical practice was insufficient because the trial court did not include goodwill and because the valuation was based on the partnership agreement's provision for a leaving partner. The only acceptable evidence of goodwill is evidence that other professionals are willing to pay for goodwill when acquiring a practice. *Hanson v. Hanson*, 738 S.W.2d 429, 435 (Mo.1987). Husband presented evidence that there was no present market for the medical practice. The trial court's valuation was not an abuse of discretion.

■ Finally, wife contends the trial court erred in accepting husband's estimate of tax liability for 1988. Husband made the estimate in December 1988 and had experience with tax liability from previous years. Husband's estimate was more than mere speculation and was consistent with his 1987 liability. Wife's fourth point is denied.

■ Husband raises one point on appeal. He contends the trial court erred in

awarding wife $3,000 in maintenance because the trial court's findings were not supported by the evidence in light of wife's extravagant lifestyle, wife's failure to maximize her income potential, and husband's inability to pay without incurring further indebtedness.

The trial court has wide discretion in determining maintenance. *Siegenthaler v. Seigenthaler,* 761 S.W.2d 262, 265 (Mo. App.1988). Maintenance may only be ordered upon a finding that the spouse seeking maintenance (1) lacks sufficient property to provide for his reasonable needs and (2) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home. V.A.M.S. § 452.335.1 (Supp.1989).

The trial court found *inter alia:*

11 .... Since 1980, Petitioner [wife] is self-employed as a hypnotherapist, doing business as Heutel Institute of Hypnosis. During the course of the marriage, the parties sustained a style of living commensurate with Respondent's [husband's] income, luxurious home with a pool, vacation home, luxury automobiles, vacations and investments in residential real estate and farm properties.

12. In consideration of Petitioner's [wife's] age, lack of education, experience, employment income and reasonable expenses, the Court finds that the Petitioner [wife] is without adequate means to support herself *in any semblance of the style of life acquired and maintained throughout the marriage.* Respondent [husband] is found to be of adequate means to support himself and to provide support to Petitioner [wife].

Husband's monthly gross income from his medical practice is $12,000. His monthly net income from the reserves is $576. The division of marital assets was $396,339.32 to wife and $387,073.69 to husband or roughly a 51% to 49% asset allocation. While not required to allocate debt, the trial court did allocate marital debt (excluding debt secured by property already allocated with the securing asset). Of a total allocated debt of $109,429.49, the trial court allocated $7,180 to wife and $102,249.49 to husband.

The trial court found that the parties sustained a style of living commensurate with husband's income. Husband contends the maintenance award is in error because the factual finding is faulty. He contends they were living beyond his income prior to the separation. Husband testified he was unable to fully pay his quarterly estimated federal tax payments on any occasion since 1980. The couple borrowed money in the early 1980's to pay taxes. However, much of husband's current debt problem arose after the separation when he failed to meet his tax obligations. During 1986, 1987 and 1988, husband paid $6,000 ($5,500 in maintenance and $500 in child support) pursuant to a *pendente lite* order. He testified that he ran a deficit with the I.R.S. during the entire period, resulting in a debt of $72,000 on taxes for the three years while the parties were filing individual returns.

Husband also seems to suggest the trial court failed to consider wife's earning capacity. Even if one accepts husband's assessment of $30,000 annually, wife's earning capacity is roughly 20% of husband's actual earnings. Furthermore, husband received two of the three income producing residential properties.

Finally, husband contends maintenance should not be set beyond the supporting party's ability to pay and meet his own needs. The major portion of husband's debt was incurred after the separation when his tax obligation mounted to $72,000. He testified he scheduled payment at $6,000 per month during the period of the *pendente lite* order. Under the circumstances, he made minimal payments to the I.R.S. during that period while paying his $6,000 PDL obligation. In effect, husband is complaining about inability to pay the debt he incurred during the period of the *pendente lite* order. Furthermore, the only evidence of a $6,000 per month scheduling of the I.R.S. debt is husband's testimony. The great disparity in earning capacity and roughly equal division of marital property with husband receiving more of

the income producing properties supports the trial court's maintenance award. Husband's point is denied.

Wherefore, we affirm the trial court's judgment in part and remand in part for the trial court to modify its child support order consistent with this opinion.

GARY M. GAERTNER, P.J., concurs.

CRIST, concurs in result.