Juliana Harris **LEAHY** (Clapp),
Respondent,

v.

Joseph Michael **LEAHY**, Appellant.

No. 75074.

Supreme Court of Missouri,
En Banc.

June 29, 1993.

As Modified on Denial of Rehearing
Aug. 17, 1993.

James P. Moroney, Kansas City, for appellant.

Gail Berkowitz, Kansas City, for respondent.

THOMAS, Judge.

This is an action to modify child support. On February 23, 1976, the Circuit Court of Jackson County entered an order dissolving the marriage of Joseph Leahy and Juliana Clapp. Juliana Clapp was given custody of the couple's minor child, Anna Harris Leahy, who was born on February 28, 1973. Joseph Leahy was ordered to pay child support of $165.00 per month. This child support order was modified in 1989 to $500.00 per month. On December 27, 1991, another motion to modify child support was filed in Jackson County. This 1991 motion to modify child support gives rise to the issues presented in this case.

After the dissolution, both Mr. Leahy and Ms. Clapp remarried. Ms. Clapp currently resides in Connecticut. Mr. Leahy resides in Missouri. Mr. Leahy has five additional children from his second marriage.

This 1991 motion to increase child support was based on an increase in the costs of Anna's living expenses and Joseph Leahy's increased income and ability to pay. Anna's increased expenses were due in part to her enrollment at Boston University in the fall of 1992. The costs of attending Boston University for 1992, including tuition and room and board, is $23,522 or $1,960 per month. Anna also indicated an additional expense of $300.00 per month for books, clothing, recreation, and other personal expenses.

The motion to increase child support was set for hearing on April 29, 1992. Prior to this date, Ms. Clapp had served a discovery request on Mr. Leahy on January 11, 1992. When there was no response to this request, a second request was made on March 17, 1992. Mr. Leahy still had not responded to any of the discovery requests as of April 29, 1992. Therefore, during the off-the-record hearing on April 29 and 30, 1992, the court heard arguments by both parties. According to Ms. Clapp's brief, the trial court directed Ms. Clapp's attorney during this hearing to draft a proposed order based on the discussion at the hearing and submit the proposed order to Mr. Leahy's attorney for his approval. Mr. Le-

ahy's attorney refused to sign this order. The proposed order was then submitted to the court. The court signed this order on May 27, 1992. This order encouraged Ms. Clapp to help facilitate contact between Anna and her father, required Mr. Leahy to respond to discovery requests, and required payment to Ms. Clapp's attorney of "attorney's fees in the sum of $1,500.00 as and for a portion of Petitioner's fees incurred in an attempt to ascertain records pursuant to interrogatories and requests for documents."

During the hearing in April, Mr. Leahy advised the court of his poor relationship with his daughter. Because the issues of visitation and custody were not before the court and Mr. Leahy did not choose to put these issues before the court, the trial judge agreed to meet informally with Mr. Leahy concerning the problems he was having with his daughter. It is not clear whether the trial judge or Mr. Leahy's attorney requested this meeting. Mr. Leahy met with the trial judge in chambers on May 22, 1992, concerning these visitation problems. There is no record of the meeting. Neither of the parties' attorneys were present for the meeting.

After the hearing in April, Mr. Leahy still failed to respond to Ms. Clapp's discovery requests. On May 27, 1992, the trial judge signed the order, discussed above, requiring Mr. Leahy to respond to all discovery requests and to pay attorney's fees of $1,500.00 for the portion of fees Ms. Clapp's attorney had incurred in enforcing the discovery requests.

On Friday, June 5, and Monday, June 8, 1992, the motion to modify child support was heard. The following evidence was presented concerning the financial circumstances of the parties. Anna's mother, Juliana Clapp, works as a librarian at Guilford Free Library in Guilford, Connecticut. She works thirty hours per week and earns a little over $10.00 per hour. Her gross monthly income is $1,371.50. Anna's father, Joseph Leahy, is the president and sole shareholder of Jovial, Inc. The business of Jovial, Inc., is doing voice overs for advertisements and narrations. Joseph Le-

ahy's voice is the primary asset of the corporation. The trial court found that the Jovial, Inc., tax return for 1989 reflected gross sales of $302,450 and compensation to Joseph Leahy in the amount of $193,993. The 1990 income tax return for Jovial, Inc., reflected gross sales of $378,679 and compensation to Joseph Leahy in the amount of $248,000. Joseph Leahy's personal income tax returns reflected wages, salaries, and tips as follows: 1988, $129,893; 1989, $208,134; and 1990, $248,941; a 1991 tax return had not yet been filed at the time of the trial. The bank records for Jovial, Inc., from January 1, 1992, to April 30, 1992, reflected gross deposits of $157,080.85.

The trial court found that Anna's expenses were reasonable. The trial court further held:

That there has been a change of circumstances so substantial and continuing as to make the Court's prior orders as to child support unreasonable, in that:

a. Respondent has enjoyed a substantial increase in income;

b. That the minor child shall be attending college beginning August, 1992;

c. That the attending college expenses were unknown at the time of the prior order; and

d. That the Form 14 reflects a greater than twenty percent (20%) increase in the child support owing from Respondent to Petitioner.

The trial court held that, based on the income of the parties, Form 14, which gives the guidelines for the amount of child support based on the parties' incomes, reflected $1,000 per month for child support. The trial judge further held that, based on the comments to Form 14, college expenses are not taken into consideration within the chart and that the evidence presented supported Anna's educational needs to be $1,259 per month. The judge then determined that, based on Joseph Leahy's income, he was responsible for 92% ($2,080.00 per month) of Anna's support and that Juliana Clapp is responsible for 8% of Anna's support. Joseph Leahy was also ordered to pay $5,721.50 of the $7,221.50 of Juliana's attorneys fees be-

cause the court determined that this type of proceeding generally costs a party $1,500.00 and because of Mr. Leahy's actions Ms. Clapp actually incurred $7,221.50 to bring this action.

■ This Court has exclusive appellate jurisdiction over this matter because Mr. Leahy asserts that section 452.370 is unconstitutional. We affirm the decision of the trial court.

### Mr. Leahy's Ex Parte Conference with the Trial Judge

During hearings on April 29 and 30, 1992, Mr. Leahy attempted to assert various objections and complaints based upon the poor relationship that exists between him and his daughter Anna. The trial judge attempted several times to explain that these matters were not relevant in this lawsuit because visitation was not an issue; the judge even invited Mr. Leahy to amend his petition to make this an issue, but Mr. Leahy did not do so. In an effort to mitigate this problem, it was suggested that Mr. Leahy would meet with the trial judge in chambers and discuss the unsatisfactory relationship that exists between himself and his daughter and possible solutions. It is not clear whether the trial judge or Mr. Leahy's attorney suggested the meeting, but it is clear that Mr. Leahy, Mr. Leahy's attorney, Ms. Berkowitz (who is Ms. Clapp's attorney), and Ms. Clapp (who was directly advised by her attorney that this meeting was to occur) all knew about the proposed meeting and the subject of the discussions (which did not relate to the issues before the court). It is also clear that no one objected or raised any question about the proposed meeting with the judge. Moreover, Mr. Leahy, who is now asserting this as a basis of reversal on appeal, participated in the in-chambers conference and made no objection either at the time or at the trial two weeks later.

■ Mr. Leahy asserts that the in camera, off-the-record meeting between himself and the trial judge on May 22, 1992, violated Supreme Court Rule 2, the Code of Judicial Conduct. Specifically, Mr. Leahy asserts that the trial judge violated Canon 3 A(4) and 3 C(1)(a) of Rule 2. Canon 3 A(4) provides in pertinent part:

A judge should accord to every person who is legally interested in a proceeding and the person's lawyer full right to be heard according to law and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding....

Canon 3 C(1) provides:

A judge should recuse in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where the judge: (a) has a personal bias or prejudice concerning the proceeding; ....

We find no merit in Mr. Leahy's contention. We do not believe that this sort of conference, which most nearly resembles a settlement conference with the judge conferring first with one party and then the other, violates either of the foregoing rules, and, in any event, it would be for Ms. Clapp not Mr. Leahy, an active party to the conference, to object. We do not recommend this procedure; it would certainly be preferable to have this type of meeting on the record with all of the attorneys present. However, while we can understand that this might be objectionable to a party or an attorney who was not present, we are hard pressed to understand how it could prejudice Mr. Leahy. We reject this claim as a basis for Mr. Leahy's motion for a new trial.

### Increased Child Support

Mr. Leahy contends that the trial court's order of child support modification must be set aside for the following reasons: (1) the amount awarded is in excess of the presumed amount computed by using the Missouri Child Support Guideline Schedule of Basic Child Support Obligations and there was no specific finding that the presumed amount is unjust or inappropriate; (2) there is insufficient evidence to support the trial court's finding that there has been a continual and substantial change of circumstances since the date of the last modification; (3) Ms. Clapp failed to specifically request support for college expenses in the

motion to modify; and (4) Anna's desire to attend Boston University should not have been recognized by the trial court as a reasonable and special need.

While it is true that the child support awarded does exceed the amount set out in the guidelines, this fact alone does not require the trial court's order be set aside. The commentary in Form 14 explicitly states that "[e]ducational expenses such as college, private schools, and tutoring are not factored into the attached schedule." Furthermore, Rule 88.01 provides:

> When determining the amount of child support to order, a court or administrative agency shall consider all relevant factors, including:
>
> \*   \*   \*   \*   \*   \*
>
> (e) the educational needs of the child. There is a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is the amount of child support to be awarded in any judicial or administrative proceeding for dissolution of marriage, legal separation, or child support. It is sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is correct if the court or administrative agency enters in the case a written finding or specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate.

■ The trial court acknowledged that the guidelines based on Mr. Leahy's income reflect $1,000 per month child support. But the trial judge, relying on the commentary that indicates the guidelines do not take into consideration college expenses, determined "ample evidence was presented that the minor child's special educational needs are $1,259 per month." The trial court's finding that Anna's reasonable needs were $2,260 per month is in substance a specific finding after consideration of all relevant factors that the amount calculated under Form 14 was unjust or inappropriate. *Gable v. Gable*, 816 S.W.2d 287, 292 (Mo.App.1991).

■ The trial judge determined that a modification of child support was appropriate because there had been substantial and continuing changed circumstances making the last order of child support unreasonable because Mr. Leahy has enjoyed a substantial increase in income, because Anna will be incurring college expenses that were unknown at the time of the prior order, and because Form 14 calculations reflected a greater than twenty percent increase in child support due to Anna. *See In re Marriage of Goodrich*, 622 S.W.2d 411, 413 (Mo.App.1981) (holding that there is a sufficient change in circumstances so that child support may be increased when a child has increased expenses because of educational expenses combined with a substantial increase in the noncustodial parent's income). Because there is substantial evidence supporting increased child support and it is not against the weight of the evidence, we defer to the decision of the trial court. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976).

■ Mr. Leahy asserts that the order of increased child support should be set aside because Ms. Clapp failed to specifically request support for college expenses in the motion to modify. Supreme Court Rule 55.33 in pertinent part provides:

> (b) **Amendments to Conform to the Evidence.** When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admis-

sion of such evidence would prejudice him in maintaining his action or defense upon the merits.

Mr. Leahy did object to the evidence pertaining to college on the basis that requiring a divorced parent to pay college expenses for a child violated the equal protection clauses of the state and federal constitutions. This objection was overruled. However, Mr. Leahy never objected to evidence of college expenses being received by the court on the basis that Ms. Clapp had not specifically requested support for college expense in her pleadings. "Where evidence is received without objection, no complaint regarding its admission is preserved for appellate review." *In re Marriage of Wardlaw*, 809 S.W.2d 470, 473 (Mo.App.1991). The evidence pertaining to college expenses was properly admitted and considered. Ms. Clapp is entitled, as a matter of right, to amend her pleadings to conform to the proof. *Biehle v. Frazier*, 360 Mo. 1068, 232 S.W.2d 465, 466–67 (1950), allows such amendment even while the case is on appeal. The issue was tried by consent. This contention is without merit.

■ Finally, Mr. Leahy contends that the decision of the trial court should be set aside because Anna's desire to go to Boston University should be weighed against other academically appropriate schools that are less expensive. Mr. Leahy asserts that the failure to use a cost-benefit analysis concerning Anna's desire to attend Boston University requires the decision of the trial court to be set aside. There is no requirement that a child's decision to attend a particular college be subjected to a cost-benefit analysis. The aim of Form 14, Rule 88.01 and section 452.340, RSMo Supp.1992, is to help a child of divorced parents obtain a higher education with the assistance of his or her parents. In addition, the Missouri courts have deferred to the judgment of the custodial parent with respect to decisions concerning education beyond that provided by the state system. *See Jenks v. Jenks*, 385 S.W.2d 370, 380 (Mo.App.1964). The trial court is in the best position to determine whether Mr. Leahy is financially capable to help support Anna's college expenses even if those expenses encompass attending Boston University. *Murphy*, 536 S.W.2d at 32.

## Trial Court's Order Is Not Vague or Uncertain

■ Mr. Leahy contends that trial court's order of modification must be set aside because it is so vague and uncertain as to be incapable of enforcement. *Echele v. Echele*, 782 S.W.2d 430, 433 (Mo.App. 1989) (order requiring father to pay one-half or one-third the cost of higher education expenses invalid); *Hahn v. Hahn*, 785 S.W.2d 756, 759 (Mo.App.1990) (order requiring father to pay "a maximum of one-half of the costs of the University of Missouri at Columbia" invalid). In the cases he relies on, however, the support orders only indicate that the parent was responsible for a certain percentage of the cost incurred by his or her child while attending college, there was no exact numerical figure that the parent was obliged to pay. Here, the trial court's order is clear. Mr. Leahy was ordered to pay child support of $2,080.00 per month which is 92% of Anna's reasonable needs. This order is neither vague nor uncertain and is capable of enforcement.

■ Mr. Leahy also asserts that the child support order is vague and uncertain because the trial court's order does not establish a termination date for these payments. *Heutel v. Heutel*, 803 S.W.2d 84 (Mo.App.1990) (child support order required payments to be made directly to child if he attends college or vocational school but order indefinite and uncertain because it did not specify proof necessary to trigger change in support recipient, nor whether full-time status is required, nor what the duration of the award is). It is irrelevant that the court did not set a termination date because section 452.340.5 provides that when a child chooses to pursue a higher education "the parental support obligation shall continue until the child completes his education, or until the child reaches the age of twenty-two, whichever first occurs." The statute specifies the termination date. (Mr. Leahy, at the very

latest, will no longer be obliged to pay child support after Anna's 22nd birthday).

In addition, Mr. Leahy asserts that orders of support conditioned upon the child attending college at some future date have been held unenforceable because such an order necessarily requires a subsequent hearing to determine if the child is in fact attending school. Mr. Leahy relies on *In re Marriage of Hughes*, 734 S.W.2d 280, 282 (Mo.App.1987); *Sunderwith v. Williams*, 553 S.W.2d 889, 894 (Mo.App. 1977), to support this assertion. These two cases are distinguishable because in *Sunderwith* the court's order encompassed children who were not old enough to attend college and in *Hughes* there was no showing that the child involved had actually decided to attend college. In *Tuning v. Tuning*, 841 S.W.2d 264, 267 (Mo.App. 1992), the Court of Appeals, Southern District, allowed child support to be increased to take into consideration college expenses for a child who was a senior in high school who indicated his intention to go to the University of Missouri regardless of the fact that he was not yet attending college. The court stated:

> Consideration of a child's college expenses need not wait until he has entered college. In fact, there may be circumstances where, unless those expenses are considered in advance, the child could not attend college. An increase in child support for such future expenses can be made effective at a future date and contingent upon the child's entry into college.

Mr. Leahy also relies on *Heutel* for the proposition that the order of the trial court is indefinite because there was no specification whether full time student attendance was required. *Heutel*, 803 S.W.2d at 90. The evidence is sufficient that Anna was intending to attend Boston University in the fall of 1992, and there was no assertion by Mr. Leahy in oral argument or his brief that Anna failed to attend Boston University or that she did not attend classes on a full-time basis this past year. Furthermore, it appears that the trial judge based his decision for the amount of child support on how much it costs to attend Boston University as a full time-student. If Mr. Leahy wishes to present evidence that Anna is not attending Boston University or that she is failing to attend her classes, Mr. Leahy should file a motion seeking to modify child support.

Appellant cautions in his brief that a review of Missouri decisional law suggests that drafting an order that requires payment of educational expenses is a task to be given forethought; a review of the appellant's claims and Missouri cases relevant thereto indicates that careful forethought was given because this order avoids all of the dangers inherent in drafting such an order.

Mr. Leahy's last argument concerning this point is that he was ordered to pay retroactive child support for expenses which were not in fact incurred by Ms. Clapp. The trial court's order required that Mr. Leahy "pay $2,080 per month for the months of May and June, less $500 per month paid in both May and June...." A court may make an award of child support retroactive. *Otey v. Otey*, 723 S.W.2d 600, 602 (Mo.App.1987). There was evidence presented that Ms. Clapp had made a payment of $2,311.00 on May 15, 1992, to Boston University and that another payment was due on June 15, 1992. A decision to make an award retroactive is within the discretion of the trial judge. *Brown v. Brown*, 537 S.W.2d 434, 438 (Mo.App.1976). We hold that the trial judge did not abuse his discretion.

### Attorney's Fees

Mr. Leahy next alleges that the trial judge in his May, 27, 1992, order erred in awarding interim attorney's fees to Ms. Clapp. The trial court held:

> That Petitioner has requested attorney's fees in the sum of $1,500.00 as and for a portion of Petitioner's fees incurred in an attempt to ascertain records pursuant to interrogatories and requests for documents. The Respondent is ordered to pay the sum of $1,500.00 to the law firm of Berkowitz & Cook.

Mr. Leahy asserts that this order violates his rights under the Fifth and Fourteenth Amendments of the United States Constitution and Sections 2 and 10 of Article I of the Missouri Constitution. However, Mr. Leahy fails to assert how awarding attorney's fees violates these rights and, as a result, this argument will not be considered. *Boys Steel Erection, Inc. v. Hercules Construction Co.*, 765 S.W.2d 684, 687 (Mo.App.1989) ("the references are merely bald statements without supporting argument. We are not required to address assertions made without reasoning.").

Mr. Leahy also asserts that the order is not supported by evidence and violates the statutory purpose of section 452.355, RSMo Supp.1992. The pertinent part of section 452.355.1 provides:

The court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under sections 452.300 to 452.415 [covering dissolution of marriage, child custody, etc.] and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.

A judge may impose sanctions against a party who fails to comply with discovery requests under Rule 61.01, which provides in pertinent part:

**(d) Failure to Produce Documents, and Things or to Permit Inspection.** If a party ... fails to produce documents and tangible things as requested under Rule 58.01, the discovering party may move for an order compelling compliance in accordance with the request. If the motion is granted, the court shall, after opportunity for hearing, require the party whose conduct necessitated the motion, or the party or attorney advising such conduct or both of them, to pay the moving party the reasonable expenses incurred by reason of the party's failure to permit such discovery and in obtaining the order, including attorney's fees, un-

less the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjustified.

Either section 452.355 or Rule 61.01(d) supports the imposition of the interim attorney's fees.

Supreme Court Rule 81.12 in pertinent part provides:

**(a) Contents of Record on Appeal.** The record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision. In order to reduce expense and expedite the preparation of the record on appeal, it is divided into two components, i.e. the "legal file" and the "transcript."

\* \* \* \* \* \*

The transcript shall contain the portions of the proceedings and evidence not previously reduced to written form.

The burden to demonstrate error by the trial court is on Mr. Leahy, the appellant, who "has the ultimate responsibility for the preparation and filing of the transcript." *Arnold v. State*, 789 S.W.2d 525, 526 (Mo. App.1990). The record demonstrates not only that Mr. Leahy had not responded to discovery requests served in January but also that the judge met with the parties for roughly two days working on resolving this discovery dispute. This showing on the record, in and of itself, is enough to justify sanctions under Rule 61.01(d) or interim attorney's fees under section 452.533. As this Court has previously stated, "If the attorneys or the court had desired to place 'on the record' statements, discussion, or proceedings which took place 'off the record', it was their obligation to do so at the time the statement or event occurred." *State v. Hoopes*, 534 S.W.2d 26, 32 (Mo. banc 1976). Because Mr. Leahy did not request on the record that this proceeding be "on the record," we have nothing to review to determine whether there was insufficient evidence to sustain the trial judge's order of attorney's fees. We cannot rule on the validity of this claim because without a transcript we have nothing

to review to determine if the trial court erred. *Arnold,* 789 S.W.2d at 526. Therefore, this point is denied.

### Equal Protection

Mr. Leahy made two different constitutional arguments at two different times based on violations of equal protection under both the United States and Missouri Constitutions. Neither is preserved because the constitutional issue raised at the trial level was abandoned on appeal and the constitutional issue briefed on appeal was not preserved by an appropriate objection at trial.

The constitutional objection made at trial was that there is a violation of equal protection because divorced fathers are required to pay for the expense of college for their children whereas Missouri law does not require non-divorced parents to provide their children with a college education. This constitutional claim is not briefed in this Court and is therefore abandoned. *State v. Butler,* 310 S.W.2d 952, 956 (Mo. 1958). *See also* Supreme Court Rule 84.-13(a).

▉▉ Mr. Leahy does contend in his brief in this Court that section 452.370, Rule 88.01, and Form 14 violate the equal protection clause of the Fourteenth Amendment of the United States Constitution and sections 2 and 10 of Article I of the Missouri Constitution because in applying Form 14 the five children of Mr. Leahy's existing marriage are denied equal status and the recognition that is given to their half-sister, Anna, born of Mr. Leahy's first marriage. Mr. Leahy asserts that Anna should be given child support on the basis of being one of six children receiving child support under Form 14, rather than as one child receiving child support under Form 14. This objection was raised by Mr. Leahy for the first time before the trial court in his post-trial motions (Motion in Opposition of Proposed Order to Modify Child Support); there is an endless list of cases from this Court stating that no constitutional issue is preserved unless it is raised at the earliest possible time. *See, e.g., State v. Naucke,* 829 S.W.2d 445, 460 (Mo. banc), *cert de-*nied, —— U.S. ——, 113 S.Ct. 427, 121 L.Ed.2d 348 (1992); *Christiansen v. Fulton State Hosp.,* 536 S.W.2d 159 (Mo.1976). In this case, Mr. Leahy failed to raise this issue in a timely manner, and the issue is not preserved for appeal.

Even if this constitutional claim had been properly preserved, we do not believe that Mr. Leahy's argument that Form 14 does not take into consideration his additional children has any merit. Form 14 does not ignore the existence of additional children who are not the subject of the suit. In *Smith v. Smith,* 839 S.W.2d 382, 386 (Mo. App.1992), the Court of Appeals, Southern District, held that under Form 14 "additional child[ren] in the custody of one of the parties is to be given consideration...." Furthermore, it should be noted in this case that the trial judge explicitly stated in his order that he "took into consideration the children in [Mr. Leahy's] care in that [Mr. Leahy's] statement of income and expenses reflect the expenses incurred on a monthly basis for said children."

▉▉ Mr. Leahy, however, would still contend that equal protection is violated because Anna is not treated as one of six children under Form 14 but is instead considered as one child from his first marriage, which was dissolved. The test for equal protection analysis that does not involve a fundamental right or a suspect classification is that a statute or rule will be held to be constitutional "unless it is 'patently arbitrary' and bears no rational relationship to a legitimate governmental interest." *Frontiero v. Richardson,* 411 U.S. 677, 681, 93 S.Ct. 1764, 1767, 36 L.Ed.2d 583 (1973). There is a legitimate reason to distinguish between children of a marriage that is dissolved and children of an existing marriage. Missouri has a legitimate interest in protecting the children of a marriage that is dissolved and ensuring that a noncustodial parent help support the child. This interest extends from ensuring that parents maintain responsibility for their children to the desire to prevent children of dissolved marriages from becoming wards of the state. The guidelines were designed to meet a specific and limited

problem which could reasonably be found to exist only when a marriage is dissolved. The children of an existing marriage derive many benefits that a child of a dissolved marriage is deprived of sharing. The difference in circumstances between children of dissolved marriages and children of an existing marriage allows Form 14 to distinguish between Anna and Mr. Leahy's other five children. Therefore, we believe the equal protection clauses of the state and federal constitutions are not violated, and, in any event, as we pointed out in the first instance, none of Mr. Leahy's constitutional claims were properly preserved.

The judgment of the trial court is affirmed.

All concur.