**STATE of Missouri, Respondent,**

v.

**Danny HENDRICKS, Appellant.**

**No. 79513.**

Supreme Court of Missouri,
En Banc.

April 29, 1997.

A. Renae Adamson, Asst. Public Defender, Columbia, for Appellee.

Jeremiah W. (Jay) Nixon, Attorney General, Mary Moulton Bryan, Assistant Attorney General, Jefferson City, for Respondent.

COVINGTON, Judge.

Appellant, Danny Hendricks, appeals from the trial court's judgment finding him guilty of selling a controlled substance. The Missouri Court of Appeals, Eastern District, transferred the case after opinion. *See* Rule 83.02. The Court is called upon to decide whether the trial court can properly enter a verdict of guilty of selling a controlled substance under section 195.211, RSMo 1994,[1] where a defendant utters the words of an offer to sell but does not actually have the controlled substance in his possession. The judgment of the trial court is affirmed.

On April 14, 1994, an undercover detective for the Northeast Missouri Narcotics Task Force met a confidential informant in Shelby County, Missouri. The detective and the informant discussed buying drugs from Connie Wood. The detective and the informant met Wood on the road on the way to her house. She told them to follow her to her house to make the transaction.

At Wood's house, the detective and the informant were introduced to appellant, Wood's brother. Wood went into another room and the detective and appellant sat down at the kitchen table. Wood returned with two packets, each containing approximately half a gram of cocaine. The detective gave Wood $100. Wood left the room and the detective and appellant began talking. Appellant told the detective that if he liked the cocaine that Wood had sold him, appellant could sell the detective an eight-ball the next day. An "eight-ball" is commonly used to refer to an eighth of an ounce, or three and a half grams, of cocaine. The detective told appellant that if he, the detective, liked the cocaine he would get in touch with appellant and they "would do the deal." Appellant and the detective spoke for about twenty minutes. The detective did not return to the house to complete the transaction. Appellant was later arrested, charged, and convicted of selling a controlled substance. Section 195.211.

Appellant's sole point on appeal asserts: The trial court erred in finding [appellant] guilty and in sentencing him on his convic-

---

1. Unless otherwise noted, all statutory references are to RSMo 1994.

tion for sale of a controlled substance, because such actions violated [appellant]'s right to due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Missouri Constitution, in that the State's evidence was insufficient to support the conviction because [appellant]'s statement to [the officer] that he would be willing to sell him an "eight ball" at a later date did not constitute a sale of a controlled substance.

Allegedly at issue is the question of what constitutes an offer to sell a controlled substance. Section 195.211 provides in pertinent part: "[I]t is unlawful for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute, deliver, manufacture, or produce a controlled substance." In enacting section 195.211 and its companion definitional statutes, the general assembly has defined some, but not all, of the statutory terms. Definitions include "delivery," for example, which is "the actual, constructive, or attempted transfer from one person to another ... of a controlled substance ... and *includes a sale.*" Section 195.010(10) (emphasis added). "Sale" is defined as "barter, exchange, or gift, or *offer therefor.* ..." Section 195.010(37) (emphasis added). The term "offer" is not defined in section 195.010, nor has the meaning of the term for purposes of section 195.211, as it is read together with section 195.010(37), been previously decided by this Court.

■ Appellant puts forth two subpoints for his point on appeal. Under his first subpoint, appellant does not dispute that he uttered the words of an offer. He states, instead, that mere words do not constitute a sale. He contends that, absent evidence that he actually had the controlled substance in his possession or had access to his sister's cocaine, there can be no conviction under section 195.211. Putting it another way, appellant submits that, even though the state proved that appellant asked the detective whether the detective wanted to buy an "eight ball" the following day, no evidence established that appellant had access to the substance. These statements constitute the entirety of appellant's presentation regarding appellant's subpoint one.

■ Appellant's argument does not allow a decision. Appellant does not say *why* there must be evidence that he had access to the substance. Appellant cites cases that he contends show the need for a presence of a controlled substance, but he does not connect them to the present case in any respect, nor does he provide explanation of why they might be authoritative. His statements, although thought-provocative, are nothing more. His statements are presented, then left unsupported by any reasoning. Left as they are, completely undeveloped, they provide nothing for meaningful review. Certainly they lend themselves to the possibility of a number of reasoned arguments. It is not within this Court's province, however, to speculate about, then decide, arguments that are not asserted or that are merely asserted but not developed. *Leahy v. Leahy,* 858 S.W.2d 221, 227–28 (Mo. banc 1993); *Krame v. Waller,* 849 S.W.2d 236, 239 (Mo.App. 1993).

■ There is no requirement that the argument section of an appellate brief be perfect. *Sutton v. Goldenberg,* 862 S.W.2d 515, 517 (Mo.App.1993). An appellant's brief, however, should adequately present and address the issues to be decided. *Thummel v. King,* 570 S.W.2d 679, 686 (Mo. banc 1978). Appellant's submission of error, being without reasoned argument with respect to why there must be evidence that appellant had access to the substance does not require, or even allow, a decision. *See id.*

■ In his second subpoint, appellant contends that to allow a conviction for offering to sell a controlled substance in the absence of proof that the substance was controlled would render the imitation controlled substances act "obsolete." Presumably, appellant means "superfluous." Appellant argues that if a person offered to sell cocaine but actually delivered an imitation substance, he could be subject to multiple convictions for one sale—the offer to sell a controlled substance, section 195.211, and the sale of an

imitation controlled substance, section 195.242.

■ Appellant's contention is without merit. The legislature made crimes of both the selling of an imitation controlled substance and the offering to sell a controlled substance. When a person violates more than one criminal statute, it is within the prosecutor's discretion to determine the statute or statutes under which the prosecutor desires to proceed. *State v. Watts*, 601 S.W.2d 617, 620 (Mo. banc 1980). The prosecutor's determination will be based upon the evidence, along with any other considerations that the prosecutor may properly take into account. The efficacy of the crime of selling an imitation controlled substance is not diminished by allowing a conviction for offering to sell a controlled substance without requiring presentment of the substance.

In alleged support of this subpoint, appellant cites *State v. White*, 907 S.W.2d 366 (Mo.App.1995). Appellant contends that *White* holds that the state must prove specific intent to sell an *imitation* controlled substance instead of the general intent to sell. Appellant says that *White* means the state must show specific intent, more than mere words. Giving appellant the benefit of the doubt and trying to apply *White* to this case, this Court presumes that appellant means that the state must show specific intent to sell a controlled substance. *White*, however, requires only that when a substance is presented, the defendant know the nature of the substance. Where *White* might take appellant's argument is left to surmise. Once again, appellant's statements are presented then left unsupported by any reasoning. As stated above, it is not within this Court's province to speculate about arguments that are merely asserted but not developed. *Leahy*, 858 S.W.2d at 227–28. Appellant's alternative submission does not allow a decision.

The judgment is affirmed.

HOLSTEIN, C.J., BENTON, PRICE, and ROBERTSON, JJ., concur; LIMBAUGH, J.,concurs in result; WHITE, J., dissents in separate opinion filed.

WHITE, Judge, dissents.

This conviction hinges on the question of what it means to "offer for sale." This is a crucial issue, since the expansive reading that forms the basis for this conviction vastly enlarges the class of conduct liable to severe criminal sanctions. The majority refuses to address this important question. I would answer it, and I would reverse.

### Sufficiency of Appellant's Brief

The majority bases its refusal to rule on a uncharitably narrow reading of the appellant's brief. Certainly, the brief is far from perfect. But I am far less inclined than is the majority to hold the deficiencies of his State-appointed counsel against Mr. Hendricks. He is currently imprisoned in the Ozark Correctional Center. If it is to condemn him to serve out his seven year sentence, the majority ought to at least address the substance of his appeal. It is simply not the case that the Court strictly enforces briefing rules in the way that the majority suggests. Today we hand down an opinion that describes a far less draconian approach: "this Court's policy is to decide a case on its merits rather than on technical deficiencies in the brief. Generally, we will not exercise discretion to disregard a defective point unless the deficiency impedes disposition on the merits."[1] The quality of the appellant's brief did not preclude the court of appeals from deciding the case on the merits. In fact, that court found the question to be so compelling as to necessitate transfer here. The quality of the briefing does not so obscure the issue that this Court cannot also make a decision.

1. *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo. banc 1997); *See also Brown v. Hamid*, 856 S.W.2d 51, 53 (Mo. banc 1993) (Holding that "cases should be heard on the merits if possible"); *Thummel v. King*, 570 S.W.2d 679, 690 (Mo. banc 1978) ("On numerous occasions we have expressed our reluctance to punish innocent parties for the shortcomings of counsel on appeal. As we have often declared, it is the policy of this court to decide cases on the merits whenever possible.")

Another concern in requiring briefs that address the issues presented is fairness. We have held that briefs must reasonably isolate the issue so as to ensure that the opposing side has a chance to respond.[2] Here, again, there is no doubt that the State recognized the issue and was able to make its case. The respondent's brief does not claim that appellant's brief is fatally insufficient; in fact, the State's brief contains a lengthy section entitled "Issues Raised in Appellant's Brief." The majority is alone in being unable to discern the issue.

### Offer for Sale

The issue is one of statutory interpretation.[3] The principal opinion sets out the relevant statutory language. Mr. Hendricks was convicted of delivery of cocaine. Delivery includes a sale. A sale includes "offer therefor." Thus, what is prohibited is to offer a controlled substance for sale. As the majority notes, "offer" is not a defined term. As the State urges, we give undefined statutory terms their plain meaning. "To determine the ordinary meaning of a term, this Court consults standard English language dictionaries."[4] There are two relevant definitions of "offer." One emphasizes the physical presentment of the object: "[T]o present for acceptance or rejection: hold out: TENDER, PROFFER...."[5] The sense urged by the State is "to declare one's readiness or willingness,"[6] as the evidence shows Mr. Hendricks did. But that sense of offer is "used with an infinitive object...." The statute does not hold liable for a sale one who *offers to sell* a controlled substance. That would criminalize the act of declaring one's readiness to commit a crime—what the State claims that this statute does. But both the State's brief and the majority opinion emphasize the difference in meanings. The conduct at issue here is repeatedly described—never as "offer for sale"—but only with the phrase "offer to sell." That phrase much more accurately describes the conduct, but is not what the legislature chose to criminalize.

Thus, Mr. Hendricks's argument, which the majority purports to find nonsensical is directly on point. If the legislature had chosen to criminalize mere words declaring one to be willing to engage in criminal conduct, it could have done so by proscribing the conduct "offer to sell."[7] Instead, what the legislature actually did was to prohibit the presentment of drugs for sale. Thus, proof of the physical presence of drugs is a required element of the crime of offering drugs for sale. This is eminently reasonable in light of the substance-centered nature of the drug statute. The list of controlled substances is long, technical and concerned with details about whether the controlled substance contains salts or precursors of drugs, what its purity and chemical composition are.[8] Penalties are based upon the actual weight of the substance in question.[9] As appellant points out, the legislature has separately criminalized (with a much less severe penalty) the delivery of an imitation controlled substance.[10] This is not, as the majority misconceives it, an argument about the power of the legislature to provide two statutes that may be violated by the same conduct. It is an argument about legislative intent. It makes no sense for the legislature to have enacted a

---

2. *Thummel,* 570 S.W.2d at 686.

3. As the court of appeals noted, there is also a serious question as to whether sufficient evidence of a culpable mental state was presented to convict Mr. Hendricks. Since Mr. Hendricks does not squarely address this point in his brief, and since I believe the point he does raise compels reversal, I will not discuss this issue.

4. *Farmland Indus., Inc. v. Republic Ins. Co.,* 941 S.W.2d 505, 508 (Mo. banc 1997).

5. Webster's Third New International Dictionary 1566 (1981) (emphasis in the original).

6. *Id.*

7. And the legislature has, in fact, done so in other areas. *See, e.g. State v. Roberts,* 779 S.W.2d 576, 578 (Mo.1989) (upholding a conviction based upon a statute that imposed prostitution liability on one who *"offers* or agrees *to* engage in sexual conduct with another person in return for something of value ....")* (emphasis supplied).

8. Section 195.017, RSMo 1994.

9. *See, e.g.,* sec. 195.211.3, RSMo 1994.

10. Section 195.242, RSMo 1994.

separate crime for delivering an imitation controlled substance when—in every single case—such conduct would already violate the more severe and easier to prove crime of offering to sell a controlled substance. The more reasonable explanation is that the legislature merely intended to specify that a sale did not have to be consummated in order to be prohibited. The focus of this crime is delivery. The presentment of a substance comes much closer to delivery than does mere discussion.

I am not blind to the fact that the conduct of Mr. Hendricks and his association with his sister's drug sale give rise to the strong inference that he was engaged in nefarious activity. Perhaps if the officer had returned the next day, Mr. Hendricks would have consummated the sale. Mr. Hendricks might have been chargeable as a conspirator or accomplice to his sister's sale. The legislature has provided numerous weapons to combat even the anticipation of drug transactions. On his conduct alone, Mr. Hendricks might have been charged with an attempt to deliver cocaine. But all of these theories have higher, more specific evidentiary burdens than the one the State suggests, which requires evidence of words, not deeds. We are not free—merely because we find this conduct reprehensible—to expand the legislature's words to cover it. By doing so we risk the danger recognized by the court of appeals of "punish[ing] those making sarcastic or insincere statements motivated by bravado." If the legislature wishes to criminalize such behavior, it must speak more clearly than it has. Until then, we are compelled to interpret its penal laws strictly in favor of the accused.[11]

Despite the majority's inability to understand Mr. Hendricks's brief, he raises a crucially important question. It should at least be answered. Since the majority finds his appellate counsel's brief so flawed, I hope it will be willing to answer the question when he presents his motion to recall the mandate.

I respectfully dissent.

---

**11.** *See, e.g., State v. Hobokin,* 768 S.W.2d 76, 77 (Mo.1989).