George Alvin ANDERSON,
Jr., Appellant,

v.

The STATE of Texas, State.

No. 2–89–049–CR.

Court of Appeals of Texas,
Fort Worth.

April 4, 1990.

## OPINION

DAY, Justice.

Anderson appeals from his conviction for aggravated sexual assault. Finding no error, we affirm.

The offense for which appellant was convicted occurred in a vacant apartment leased by the complainant. At approximately 10:00 p.m., as the complainant was entering her apartment, a man ran toward her door and forced it open throwing her into the wall. The attacker held complainant from behind with a knife at her throat and threatened to kill her. The man then raped the complainant both vaginally and anally and forced her to give him her car keys.

Shortly after the assault, the complainant found a wallet in the room in which she had been raped. The wallet contained two photo identification cards. One of the photo identification cards belonged to appellant, George Anderson, and the other to his brother, Ernest Anderson. The wallet also contained a municipal court receipt issued to appellant, George Anderson. Before being carried to the hospital in an hysterical condition, the complainant viewed the two photo identification cards and tentatively identified appellant's brother, Ernest Anderson, as the rapist.[1] Based upon the tentative identification of appellant's brother, Ernest Anderson, as the attacker, the police obtained an arrest warrant for appellant's brother.

Seeking to execute the arrest warrant, the officers went to appellant's house.[2] The officers asked to be admitted to the house and appellant did not object to their entry. After entering the house, the officers requested identification from appellant to determine whether appellant, in fact, was the subject of the arrest warrant they were attempting to execute. Appellant

McCrarey & Friedman, Robert McCrarey, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Lisa C. McMinn, Asst., Fort Worth, for State.

Before FARRIS, LATTIMORE and DAY, JJ.

1. During the trial, the complainant made a definite identification of appellant as her attacker. She also testified that her attacker was wearing a baseball cap at the time of the assault. On the photo identification cards of appellant and his brother, appellant was bare-headed and his brother, Ernest Anderson, was wearing a baseball cap.

2. The record reflects that appellant's brother, Ernest Anderson, resided with appellant.

then walked into his bedroom for the purpose of obtaining his identification and the officers followed, without protest from appellant. The officers saw appellant pick up a set of car keys from the dresser top and place them in his pocket and the officers also observed an identification card belonging to the complainant on the dresser top. Recognizing that the car keys which appellant removed from the dresser matched the description of the car keys taken from complainant by her attacker, the officers asked appellant who owned the car keys and identification card. Appellant responded that the keys belonged to his mother and the identification card belonged to his sister. At that juncture, the officers placed appellant under arrest and gave appellant the *Miranda* warning. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The arrest took place at approximately 3:30 p.m., and appellant was placed in the county jail. Approximately six hours later, at about 9:30 p.m., appellant was taken before a magistrate, who explained to appellant his *Miranda* rights and set a bond for appellant's release. At approximately 10:40 p.m., the officers removed appellant from the county jail, transported him to the detective's office where he was, for the third time, advised of his *Miranda* rights. At that time, appellant gave a statement to the officers confessing the rape.

Appellant raises six points of error. In the interest of clarity, we will initially address his point of error two. In this point, appellant contends the trial court erred in admitting his confession into evidence because it was the result of appellant's warrantless arrest.

TEX.CODE CRIM.PROC.ANN. art. 14.04 (Vernon 1977) allows an officer to arrest without a warrant when he has satisfactory proof "upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant...." "Satisfactory proof" under article 14.04 is the equivalent of probable cause. *Earley v. State*, 635 S.W.2d 528, 531 (Tex.Crim.App. [Panel Op.]

1982). It may be based on a combination of information provided by others and the officer's personal observations. *Salazar v. State*, 688 S.W.2d 660, 663 (Tex.App.—Amarillo 1985, no pet.). Probable cause arises when the knowledge of the arresting officer, based on reasonably trustworthy information, would warrant a reasonable and prudent person in believing that a particular person has committed or is committing a crime. *Vasquez v. State*, 739 S.W.2d 37, 44 (Tex.Crim.App.1987).

In making the arrest of appellant, the officers had information that the rapist had left a billfold at the scene containing identification for both appellant and his brother, Ernest Anderson. Although the complainant had tentatively identified Ernest as her attacker from a photograph in the billfold, the officer at the scene believed the complainant had not seen the identification card bearing appellant's picture. The officer testified the photographs of appellant and his brother, Ernest Anderson, looked similar. Appellant told the officers that the complainant's keys and identification card lying on his bedroom dresser belonged to his mother and sister. The officers knew at that time that both items had been stolen from the complainant.

Under the above facts, we hold the officers could reasonably have believed that appellant, and not his brother, Ernest Anderson, was the rapist. We find there was sufficient probable cause and satisfactory proof to make the warrantless arrest. *See Vasquez*, 739 S.W.2d at 45 (defendant matched description of robber provided by victims and had property stolen from the victims on his person which he attempted to dispose of); *Johnson v. State*, 722 S.W.2d 417, 420 (Tex.Crim.App.1986) (defendant matched general description of suspect, had blood on his clothing, and admitted that keys found at scene of crime belonged to him).

In addition, the officers had reason to believe that appellant would escape. When the officers first approached appellant, they told him they were investigating a sexual assault. Especially after appellant

told officers that the complainant's keys and identification card belonged to members of his family, appellant probably knew the officers suspected that he was the rapist. Detective Yale testified he did not obtain a warrant before arresting appellant because he feared appellant would escape.

The officers had a reasonable belief that appellant might escape if they left to obtain an arrest warrant. *See Fearance v. State,* 771 S.W.2d 486, 509 (Tex.Crim.App.1988), citing *West v. State,* 720 S.W.2d 511, 513–18 (Tex.Crim.App.1986), *cert. denied,* 481 U.S. 1072, 107 S.Ct. 2470, 95 L.Ed.2d 878 (1987) (facts known to officers justified reasonable belief that suspect would flee if not arrested when officers went to his motel room and questioned him about a murder).

In summary, the officers had probable cause to arrest appellant, and his warrantless arrest was permissible, since the officers had satisfactory proof that appellant had committed a felony and they reasonably believed that he would escape. Therefore, we find that the trial court did not err in denying the motion to suppress appellant's confession, based upon the contention that it was the product of an illegal arrest. Appellant's second point of error is overruled.

◼ In his first point of error, appellant contends his written confession should have been suppressed because it was not voluntary. Appellant relies on *Jurek v. Estelle,* 623 F.2d 929 (5th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 and 450 U.S. 1014, 101 S.Ct. 1724, 68 L.Ed.2d 214 (1981), and contends his written statement was not voluntary because the statement was not done in the words of appellant but were the words of the detective who questioned him. *Jurek* involved a mentally deficient defendant whose confession was obviously the result of purposeful and suggestive interrogation. *Id.* at 941, n. 7. Here, to the contrary, appellant's statement was made in his own words. On cross-examination of the police officer during the hearing on the motion to suppress and at trial, the following questions and answers took place:

Q. What did you do when you say he was stumped as to what happened?

A. We went over the offense as [victim] had reported it and he would recall a little bit and keep on going. I never put any words in his mouth.

. . . .

Q. ... When he hit a spot that he didn't know or appeared not to know anything about, you told him what the victim said and that's what went into the statement?

A. No, sir.

Q. Well, what happened after you would tell him what the victim's story was?

A. The information typed on the statement are the words that came out of Mr. Anderson's mouth. He probably did not know the exact date that that offense occurred. We looked at the calendar and figured that out. That's where we started.

In light of the fact that appellant read and signed his statement, and made corrections to it after it was typed, appellant's statement was not involuntary merely because he may have been prompted by questions or reminded of some of the facts. *See Thomas v. State,* 629 S.W.2d 112, 115 (Tex.App.—Dallas 1981), *aff'd,* 638 S.W.2d 481 (Tex.Crim.App.1982) (admissibility of confession not affected by fact it may have been induced by confronting accused with legal evidence of his guilt).

In accordance with TEX.CODE CRIM. PROC.ANN. art. 38.22, sec. 6 (Vernon 1979), the trial court held a hearing on the issue of voluntariness of appellant's confession and made the following findings:

While in custody, the Defendant received his Miranda warning from officer [sic] J. J. Yale who verbally related the Miranda warnings. The Defendant was later warned by Municipal Court Judge Jerry Moore. The Defendant received warning from the green card, State's Exhibit No. 1, of all of his Miranda rights by Officer J. J. Yale.

The Defendant was again told of his rights under the Miranda [sic] when the officer went over the top portion of State's Exhibit No. 2, which is the state-

ment of the Defendant above that statement and included on that statement, I should say, is the recitation of the warnings required by the Miranda decision.

The Court finds that the Defendant was adequately warned of his rights several times by Officer Yale and once by Officer—by Municipal Court Judge Moore.

The Court finds that even if the arrest of the Defendant was illegal, which I do not believe it was, the illegality, if any, was—the illegality was attenuated by the intervening circumstances, including the passing of time, the repeated Miranda warnings that was [sic] given to the Defendant.

The Court further finds that in this particular case there was no flagrant police misconduct. The police went there pursuant to an arrest warrant for another person and having seen the Defendant, the Court finds that the officers followed him into the house and arrested him only upon having found or having discovered other evidence which led them to believe with reasonable belief that the Defendant was, in fact, a suspect wanted in this case.

■ Challenges to the trial court's ruling regarding the voluntariness of a defendant's confession should be directed to whether the court abused its discretion in its findings of fact or whether the court properly applied the law to the facts. *Sinegal v. State*, 582 S.W.2d 135, 137 (Tex. Crim.App. [Panel Op.] 1979). At a hearing on the voluntariness of a defendant's confession, the trial court is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Hawkins v. State*, 660 S.W.2d 65, 72 (Tex. Crim.App.1983). The trial court's findings of fact will be upheld if supported by the record. *See Burks v. State*, 583 S.W.2d 389, 393 (Tex.Crim.App.1979), *cert. denied*, 448 U.S. 907, 100 S.Ct. 3050, 65 L.Ed.2d 1136 (1980).

■ Furthermore, there is other evidence that appellant's confession was voluntarily made. Appellant was given *Miranda* warnings on three occasions, and he

indicated he understood his rights and did not wish to invoke them. In addition, appellant was not threatened and no promises were made to him in exchange for his confession.

Appellant also advances the argument that his written confession was involuntary because it was given as a result of his illegal arrest. In addressing appellant's point of error two, we have held that his warrantless arrest was permissible. Even if we should be incorrect in such holding, the taint of any illegal arrest was sufficiently attenuated to render his confession voluntary.

■ In determining whether a confession which was the result of an illegal arrest should be suppressed, we consider the following four factors: (1) whether *Miranda* warnings were given; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. *Maixner v. State*, 753 S.W.2d 151, 155 (Tex. Crim.App.1988); *Self v. State*, 709 S.W.2d 662, 666 (Tex.Crim.App.1986).

Appellant received *Miranda* warnings on three occasions, one such warning appearing on the face of his confession. With regard to the time lapse, appellant was arrested at 3:30 p.m. He was warned at 10:40 p.m., whereupon he began to give his statement and completed it at 11:09 p.m. Appellant was questioned for 30 to 45 minutes before he gave his statement. With regard to intervening circumstances, appellant was taken before a magistrate at 9:30 p.m., after the time of his arrest and before his confession. Lastly, we find no flagrant misconduct on the part of the police. Police acted upon a valid warrant. Upon attempting to determine appellant's identity, they saw incriminating evidence. Since over seven hours elapsed between the time of appellant's arrest and confession, he was given *Miranda* warnings on three occasions, he was taken before a magistrate before his confession, and there was no flagrant or purposeful police misconduct, we find no causal connection between the

alleged illegal arrest and appellant's confession.

We hold that the trial court's findings are supported by the record. Appellant was adequately warned of his rights; knowingly, intelligently, and voluntarily waived his rights; read and signed his statement; and was not coerced, threatened or promised anything in return for his statement, his confession was voluntary. Any taint from the arrest of appellant was sufficiently attentuated so that the confession was independent of the arrest and was voluntary. The trial court's findings of fact were supported by the record, and it did not err in admitting appellant's statement into evidence. Appellant's first point of error is overruled.

In his third and fourth points of error, appellant argues that his oral statements made to the officers with respect to the ownership of complainant's car keys and identification card should have been suppressed because such oral statements were a product of custodial interrogation in violation of TEX.CODE CRIM.PROC.ANN. art. 38.22 (Vernon Supp.1990).

■ Questions of whether an individual has been subjected to "custodial interrogation" under article 38.22 are to be construed consistently with that term's meaning under the fifth amendment to the United States Constitution. *Wicker v. State*, 740 S.W.2d 779, 785 (Tex.Crim.App.1987), *cert. denied*, 485 U.S. 938, 108 S.Ct. 1117, 99 L.Ed.2d 278 (1988). Under the fifth amendment, a person is in custody when his freedom of action has been deprived in any significant way. *Miranda*, 384 U.S. 436, 86 S.Ct. 1602. This determination is to be made from the viewpoint of a reasonable person in the defendant's position. *Berkemer v. McCarty*, 468 U.S. 420, 422, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984).

The Texas Court of Criminal Appeals has held that to determine whether one is "in custody," the following factors should be considered: (1) whether probable cause existed; (2) whether the defendant was the focus of the investigation; (3) the subjective intent of police; and (4) the subjective belief of the accused. *Wicker*, 740 S.W.2d at 786.

In determining whether appellant's oral statements concerning ownership of complainant's keys and identification card were the result of a custodial interrogation, we shall apply both the fifth amendment standard set out by the U.S. Supreme Court and the article 38.22 standard set out by the Court of Criminal Appeals.

Before the officers questioned appellant about the keys and identification card and he gave an answer officers knew to be false, probable cause to arrest appellant had not yet arisen. At that time, appellant was not the focus of the investigation since the officers had an arrest warrant for appellant's brother. While the officer testified that appellant was not free to leave the house, he clarified that appellant was not free to leave until, "I cleared it up." From the context in which this statement was made, it appears that the matter to be cleared up was that the officer had not at that time satisfied himself that appellant was not the person for whom he had a warrant. There was no testimony as to the subjective belief of appellant.

■ We hold that appellant was not in custody when the officers questioned him concerning ownership of complainant's keys and identification card. At the time of directing such questions toward appellant, the officers had not yet determined appellant's identity. The officers' questions concerning ownership of the keys and identification card were not custodial interrogation. *Compare DeClouette v. State*, 699 S.W.2d 341, 344 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd) (officer's questioning of defendant to determine whether or not he was the suspect officer was looking for was not custodial interrogation) and *Lockard v. State*, 683 S.W.2d 166, 169 (Tex. App.—Fort Worth 1985, pet. ref'd) (it was not custodial interrogation when officer, having seen incriminating evidence in defendant's room, asked defendant his name, and officer immediately arrested defendant when he gave name which linked him to the crime).

We also hold that under the U.S. Supreme Court standards, appellant was not in custody. A reasonable person in appellant's position would have felt that he was free to leave since the police had a warrant for another person. Since the officers asked appellant for identification, a reasonable person would have believed that if he produced some proof of his identity showing he was not Ernest Anderson, he would have been free to leave.

■ At most, appellant was under investigative detention when the officers questioned him. Questioning during investigative detention does not constitute custodial interrogation. *See Brown v. State*, 725 S.W.2d 801 (Tex.App.—Austin 1987), *aff'd on remand*, 764 S.W.2d 931 (Tex.App. —Austin 1989, pet. granted).

Since appellant was not in custody under either the fifth amendment or under article 38.22, appellant's oral statements made in response to questioning about ownership of the keys and identification card were properly admitted into evidence. We overrule appellant's third and fourth points of error.

In his fifth and sixth points of error, appellant contends that the complainant's car keys and identification card should have been suppressed since they were seized by the officers as a result of appellant's illegal arrest, search and seizure.

As we have held above, appellant was not placed under arrest until such time as he had lied about the ownership of complainant's keys and identification card. The police officers went to appellant's house to execute an arrest warrant for his brother, Ernest Anderson. Appellant invited the officers into his house and did not object to their following him into the bedroom. The car keys and identification card seized by the officers were in plain view at a time when appellant had been properly detained for investigation.

■ A police officer may seize without a warrant any item in plain view when its discovery is inadvertent, and it is immediately apparent to the officer that the item is evidence of a crime, and the officer has a right to be in the place where the item was found. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Snider v. State*, 681 S.W.2d 60, 63 (Tex.Crim.App.1984); *see also Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

■ Appellant invited the officers into his house and did not object to their following him into the bedroom where he had indicated his identification documents were located. Appellant's invitation of the officers into the house and his lack of objection to the officers following him into his bedroom gave the officers the right to be in the place where they found the incriminating evidence of complainant's car keys and identification card. *See Simpson v. State*, 709 S.W.2d 797 (Tex.App.—Fort Worth 1986, pet. ref'd) (officers' discovery of marihuana in house after invitation to enter gave them right to enter bedroom where other drugs were found in plain view); *Luevanos v. State*, 691 S.W.2d 60 (Tex. App.—San Antonio 1985, pet. ref'd, untimely filed) (officers were invited into house; therefore, they had a right to be in bedroom to see evidence in plain view). *See also Bell v. State*, 676 S.W.2d 219, 220 (Tex.App.—Corpus Christi 1984, pet. ref'd) (invitation to *enter* house does not require a showing that consent or waiver was knowing and intelligent).

■ Even if appellant had not given the officers permission to enter, by virtue of the warrant they had a right to enter the house and could have used force to enter. *See* TEX.CODE CRIM.PROC.ANN. art. 15.25 (Vernon 1977) (officer may break door if necessary to make felony arrest if he is refused admittance).

■ The officers also have the right to be in appellant's bedroom to prevent appellant from escaping and to insure their own safety. The officers asked appellant to produce identification to determine his identity. Appellant went to his bedroom to look for identification and the officers followed him. At that point, the officers were not certain if appellant was George Anderson, as he claimed, or Ernest Anderson, the person named in the war-

rant. Until appellant's identity was determined, officers were entitled to keep him in sight to prevent him from escaping. In addition, because the rape had been committed by the use of a deadly weapon, the officers followed appellant into his bedroom for their safety. *Contrast Simpson,* 709 S.W.2d at 802 (no testimony that officers were concerned for their safety and no facts upon which to base such concern even if articulated). Therefore, in order to insure that appellant would not escape and for their own protection, the officers had a right to follow appellant into the bedroom.

If the officers' act of following appellant into the bedroom to determine his identity was a seizure of appellant, the officers had a right to detain him for that purpose. Law enforcement officers may legally detain a person for criminal investigation when the detention is based on reasonable suspicion and is limited in time and obtrusiveness of the detention and in scope of the investigation. *United States v. Brignoni–Ponce,* 422 U.S. 873, 881–82, 95 S.Ct. 2574, 2580–81, 45 L.Ed.2d 607 (1975); *Ussery v. State,* 651 S.W.2d 767, 770 (Tex. Crim.App.1983). The propriety of the duration of the detention is judged by whether police pursued a means of investigation which dispelled or confirmed their suspicions quickly and in a manner that did not exceed the scope of the detention. *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325–26, 75 L.Ed.2d 229 (1983). Here, when the officers entered the house, appellant told them he was George Anderson; however, the officers were not certain that appellant was in fact George Anderson and not Ernest Anderson. Thus, further investigation was warranted, and the officers properly detained appellant for the purpose of positively identifying him.

Once inside the bedroom, the officers saw a set of keys and the complainant's identification card in plain view on a dresser. Knowing the description of the victim's missing keys and identification card, they knew these items were evidence of a crime. The officers did not know the keys were in the house when they executed the search warrant, so their discovery was inadvertent. Thus, the officers had a right to be at the location where they inadvertently saw evidence of a crime in plain view.

Additionally, any error in admitting keys and identification card was harmless in light of overwhelming evidence of appellant's guilt. TEX.R.APP.P. 81(b)(2). To determine whether error is harmless, the reviewing court must consider the probable effect on the minds of the jurors in light of the totality of the facts. *Montoya v. State,* 744 S.W.2d 15, 28 (Tex. Crim.App.1987), *cert. denied,* 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988). Appellant confessed to committing the rape, and the victim's courtroom identification of appellant as the rapist corroborated his confession. Therefore, there was overwhelming evidence of appellant's guilt and any error in admitting the evidence complained of was harmless. *See Id.* at 38.

Since the officers lawfully entered the house by the arrest warrant and by appellant's invitation to enter, and they properly detained appellant until he produced identification, the officers had a right to be in the bedroom where they inadvertently saw incriminating evidence in plain view. Therefore, the evidence was properly seized, and the trial court did not err in admitting it. Even if it was error to admit the evidence, it was harmless beyond a reasonable doubt. Appellant's fifth and sixth points of error are overruled.

The judgment of the trial court is affirmed.