Deborah Ann YOUNG, Respondent,

v.

Gregory S. YOUNG, Appellant,

Saundra Ann Rush, Respondent.

No. WD 58772.

Missouri Court of Appeals,
Western District.

Submitted May 23, 2001.

Decided Sept. 4, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 30, 2001.

Philip F. Cardarella, Kansas City, for appellant.

Michael W. Hanna, Raytown, for respondent Deborah Young.

Nancy S. Wallingford, for respondent Saundra Rush.

Before EDWIN H. SMITH, P.J., JAMES M. SMART, JR., and VICTOR C. HOWARD, JJ.

PER CURIAM:

Appellant Gregory Young appeals the trial court judgment in his dissolution case granting custody of his daughter to Saundra Rush, the child's maternal grandmother. This is the second time this case appears before this court. In *Young v. Young*, 14 S.W.3d 261 (Mo.App.2000), this court reversed the grant of custody to Rush, and remanded the case after finding

that the trial court had erred in failing to apply Section 452.375.5, which requires that the court find either that both parents are unfit, unsuitable, or unable to be a custodian, or that the welfare of the child requires third-party custody, in addition to a finding related to the best interests of the child, before the court can award custody to a third party. *Id.* at 263. Upon remand, without receiving additional evidence, the trial court made additional findings that both parents were unsuitable, that the welfare of the child required third-party custody, and that it was in the best interests of the child that custody be placed with respondent Rush.

## STATEMENT OF FACTS

At the time of the dissolution trial in November 1998, the Youngs' daughter, Samantha, was seven years old. Samantha had lived with her grandmother, Saundra Rush, during her first two years. During the time that Samantha lived with both parents, Rush participated in Samantha's care, with Rush keeping Samantha several days each week. Rush obtained temporary custody of Samantha in April 1998. Neither parent significantly supported the child during any of the time she was in Rush's care. Over the years, Saundra Rush consistently provided clothing, medical care, and school supplies for Samantha, even when Samantha was living with her parents.

After the remand of the case by this court, appellant filed a motion to dismiss Rush's petition for intervention, claiming in part that Section 452.375.5 is "void as in conflict with the 9th and 14th Amendment[s] to the Constitution of the United States" if the statute "is interpreted to conflict with such natural right of the parent, or to create an exception to such natural right of the parent outside of the unfitness, inability or unwillingness to serve as a custodial parent." The trial court denied the motion. The trial court then determined that it did not need additional evidence or argument to comply with the mandate of this court. In the new judgment dated June 20, 2000, the court made the following findings:

The Court has considered all evidence and the statutory factors as set forth in RSMo. §§ 452.375.2 and RSMo. 452.375.5.

Petitioner [Deborah Young] has abused and neglected their child:

1. By exposing the child to methamphetamine and situations of drug sale;

2. By Petitioner's abandonment of the child to Intervenor except for three years of the child's life when the family lived together; and

3. For Petitioner's failure to support.

Respondent [Gregory Young] has abused and neglected the child:

1. By failing to take action when he knew of Petitioner's involvement with methamphetamine; and allowing Petitioner's involvement with the child during same;

2. By having knowledge about Petitioner's drug situation and allowing it to continue in the home;

3. Respondent testified that it never entered his mind that Petitioner's drug use in the home was a problem;

4. By creating an atmosphere of anxiety and antagonism when communicating with Petitioner and Intervenor so that the child does not want the principals in her life to be present together and to communicate with one another;

5. By committing domestic violence in the home;

6. By failing to support the child when working and by failing to support the

child by failing to work when he had the ability to do so;

7. By being unable to communicate effectively regarding the child;

8. By creating incidents with Petitioner and Respondent in the presence of the child by yelling and screaming, thus creating apprehension in the child;

9. By intimidating and threatening others in order to gain control;

10. By not receiving and disseminating information with Petitioner and Respondent regarding the child; and

11. By abandoning the responsibility of child support until Respondent found he could gain personal advantage by paying child support and/or marital bills;

12. By failing to support the child even when asking for custody;

13. By refusing, even on the witness stand, to answer questions, such failure to communicate thus making it impossible for Respondent to carry out the policy of the State in allowing frequent and meaningful contact with the child by the other parent.

This portion of the judgment substantially followed the previously appealed judgment except that the paragraphs were now numbered. The trial court then went on to make the following additional findings:

Neither Petitioner nor Respondent is a fit and proper person to have legal or physical custody of the child. By their conduct, Petitioner and Respondent have both proven themselves to be unsuitable to have custody of the minor child.

The welfare of the child requires that sole custody of the child, subject to the provisions of the Parenting Plan ordered by the Court, be placed with Intervenor, SAUNDRA A. RUSH. It is in the best interest of the minor child, after considering all relevant factors, for Petitioner and Respondent to have specific parenting time as ordered herein.

The trial court did not specifically rule on the motion to dismiss but noted the motion had been filed and implicitly denied it.

On appeal, appellant raises points relating to the constitutionality of Section 452.375 and relating to the sufficiency of evidence to support a finding of unsuitability.

In each of the points relied upon, appellant makes a constitutional argument of some type. While the arguments are not always clearly stated, the common themes seem to be that (1) a third-party custody order based solely on the court's finding as to the "welfare of the child" is not constitutional; (2) the constitution requires clear and convincing evidence, or clear and compelling evidence, of unfitness before placement of the child can be made with a third party. Appellant Young argues that these issues were raised in the motion to dismiss (filed after the remand).

Respondents argue that the constitutional issues were not preserved for appeal because the issues were not raised at the earliest possible time. Respondents rely heavily on *Leahy v. Leahy,* 858 S.W.2d 221 (Mo. banc 1993). *Leahy* was an action to modify child support as a result of the child's increased age and college expenses. *Id.* at 222. Mr. Leahy made two different constitutional arguments at two different times based on violations of equal protection provisions of both the United States and Missouri Constitutions. *Id.* at 229. The first constitutional argument made at trial was not briefed and therefore was abandoned.[1] *Id.* The argument that was

---

1. At trial Mr. Leahy objected that there is a    violation of equal protection because divorced

made on appeal was that Section 452.370, Rule 88.01 and Form 14 violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Sections 2 and 10 of Article I of the Missouri Constitution because the five children of Mr. Leahy's existing marriage were denied the same status and recognition provided to their half-sister born of his first marriage, and on whose behalf the motion for modification of child support was filed. *Id.* In denying the constitutional claim, the Missouri Supreme Court noted:

> This objection was raised by Mr. Leahy for the first time before the trial court in his post-trial motions (Motion in Opposition of Proposed Order to Modify Child Support); there is an endless list of cases from this Court stating that no constitutional issue is preserved unless it is raised at the earliest possible time. * * * In this case, Mr. Leahy failed to raise this issue in a timely manner, and the issue is not preserved for appeal.

*Id.* (citations omitted). The court thus held that the constitutional issue was not preserved for appeal.

*In the Interest of R.H.S.*, 737 S.W.2d 227 (Mo.App.1987) was a termination of parental rights case in which the constitutional issues were not raised until after the trial had taken place and judgment had been entered, when the father moved to set aside the trial court's orders terminating his parental rights. *Id.* at 233. The father argued that Section 211.447.2(3) was unconstitutionally vague in contravention of the Fourteenth Amendment because the statute, which allowed severance of par-

ent's rights where "conditions of a potentially harmful nature continue to exist," fails to notify a parent as to what conditions must be rectified to retain their parental rights. *Id.* Finding that the constitutional issues were not preserved, this court noted that the appellant failed to raise the issues at an early date. Specifically, the court noted that he failed to raise the issues in a responsive pleading, did not move to dismiss at the start of trial, and did not raise the constitutional issues in the motion to dismiss at the close of the juvenile officer's evidence, but waited to raise the issues until after the judgment was entered. *Id.* We declined to entertain the constitutional questions. *Id.* at 234.

Mr. Young also, in the instant case, did not raise the constitutional issues in a responsive pleading, in a motion to dismiss, in a motion to dismiss at the close of evidence, in closing argument to the trial judge, or in the first appeal. The constitutional issues were raised only in a motion to dismiss after the remand of this case by this court in the first appeal.

██ Both respondents and this court in *R.H.S.* noted that the Missouri Supreme Court, in *Hanch v. K.F.C. National Management Corp.*, 615 S.W.2d 28, 33 (Mo. banc 1981), considered a First Amendment constitutional challenge to the service letter statute under the plain error doctrine.[2] *Id.* Plain error review is discretionary, however, and ordinarily will not be granted unless the appellant facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has

---

fathers are required to pay the expenses of college, where there is no such requirement in Missouri law for non-divorced parents (fathers). *Leahy,* 858 S.W.2d at 229.

**2.** Constitutional challenges considered under the plain error doctrine in criminal cases

seem to be fairly common; however, outside of the criminal field such a review is a rarity. Respondents indicate that *Hanch* is the only civil case they could find under a plain error review of a constitutional issue.

occurred. *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995).

In this case, we summarily consider the constitutional claims only to see if there is a facial appearance that a manifest injustice or miscarriage of justice has occurred. Appellant Young's first constitutional argument appears to be that a decision premised only on the welfare of the child would be constitutionally invalid. Appellant quotes *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) for the proposition that " . . . the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child-rearing decisions simply because a state judge believes a 'better' decision could be made." *Id.* at 72–73. *Troxel* was analyzing the Washington grandparent visitation statute. The statute "permits '[a]ny person' to petition a superior court for visitation rights 'at any time,' and authorizes that court to grant such visitation rights whenever 'visitation may serve the best interest of the child.' " *Id.* at 60, 120 S.Ct. 2054. The court found the Washington nonparental visitation statute is "breathtakingly broad," because "in practical effect, in the State of Washington a court can disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition based solely on the judge's determination of the child's best interests." *Id.* at 67, 120 S.Ct. 2054 (emphasis in original).

It appears to us that there are a significant distinctions between the Washington statute and the Missouri statute. For instance, in Missouri, "welfare" of the child is not the same as "best interests" of the child. *See Jones v. Jones*, 10 S.W.3d 528, 536 (Mo.App.1999). Thus, unlike the Washington visitation statute which only required a "best interest of the child" standard, the Missouri third-party custody statute requires either a fitness finding or a welfare finding in addition to the placement being in the best interests of the child.

The Missouri statute also contains a statutory presumption absent from the Washington statute. As Justice O'Connor explained in *Troxel*, "the Troxels did not allege, and no court has found, that Granville was an unfit parent. That aspect of the case is important, for there is a presumption that fit parents act in the best interests of their children." *Troxel*, 530 U.S. at 68, 120 S.Ct. 2054. The Missouri statute carries a rebuttable presumption that custody should be with the parent. "We presume parental custody is in a minor child's best interests. To rebut this presumption, the third party seeking custody must carry the burden of showing either that each parent is unfit, unsuitable, or unable to have custody or that the welfare of the child requires third party custody." *Young*, 14 S.W.3d at 264 (citations omitted).

Accordingly, we do not undertake constitutional scrutiny of the Missouri statute. We do not see that appellant has facially established substantial grounds for believing that a manifest injustice or miscarriage of justice has occurred. We, therefore, decline to review the constitutional arguments.

## STANDARD OF REVIEW

The standard of review is as in other judge-tried cases. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "A trial court has broad discretion in deciding child custody but always the best interests of the child are the ultimate concern." *R.J.A. v. G.M.A.*, 969 S.W.2d 241, 244 (Mo.App.1998). "Great deference is given a trial court's decision when custody of a minor child is involved." *Id.*

Upon review, this court presumes that a trial court awards custody with the child's best interests as its ultimate concern. This presumption arises because of the trial court's superior position to judge the credibility of witnesses and their character, sincerity, and other intangibles that might not be completely shown in the cold record. A trial court is free to believe or disbelieve all, part, or none of any witness' testimony. Moreover, an appellate court will accord a trial court's decision in custody matters greater deference than in other cases.

*Id.* (citations omitted). Where custody is granted to a third party rather than the parents, we will give the record closer scrutiny to make sure that the record supports the decision to remove the child from the custody of the parents. Once it appears, however, that the statutory concepts are established in the evidence, we will allow significant deference to the trial court especially as required on issues of credibility as to the issue of whether the third party should have custody.

### POINT I

In his first point on appeal, appellant argues the trial court erred in finding that appellant was not a fit and proper person to have legal and physical custody. He contends that such findings were unsupported by the facts and evidence and that such findings were made on remand solely to circumvent the requirements of the statute and the parental rights guaranteed to appellant by the United States Constitution. In his argument in support of this point, Young states that the lack of evidence will be discussed in point two of the brief.

■ He also argues, in his first point, that the trial court could not make a finding of unsuitability without additional evidence or argument. Thus, appellant argues, the court erred in declining additional evidence. Appellant cites no authority for the premise that the trial court must take additional evidence or argument upon remand. Buried within this point is the argument that if there was not enough evidence to support a finding that the parents were unsuitable in the first judgment, then there cannot be enough evidence upon remand when no additional evidence was taken. We disagree. In the first judgment, the court found that the parents abused and neglected the child, but did not find that neither parent was unfit or unsuitable to have custody. On remand, the court, having concluded it had already received all pertinent evidence, could reasonably have decided that it needed only to consider whether the evidence showed unfitness and unsuitability to be custodians. Indeed, if Young believed additional evidence was necessary, Young could have made an offer of proof. We see no indication that he made an offer of proof. The trial court might have reconsidered whether to allow additional evidence, and at least we would be able to evaluate the court's decision in light of that offer.

### Points II and III

■ In Young's second and third arguments, he argues that he was not unfit, unsuitable or unable to be a custodian; that a third party was not required for the welfare of the child; and that there was no credible evidence to support such findings, or that such findings would be against the weight of the evidence.

A judgment will be set aside as being "against the weight of the evidence" when the appellate court has a "firm belief that the judgment is wrong. Weight of the evidence refers to weight in probative value not quantity or the

amount of evidence. The weight of evidence is not determined by mathematics, but on its effect in inducing belief." *Flathers v. Flathers*, 948 S.W.2d 463, 465 (Mo.App.1997). This court, upon review, takes the evidence in a light favorable to the judgment. *R.J.A.*, 969 S.W.2d at 244; *Rogers v. Rogers*, 786 S.W.2d 176, 177 (Mo.App.1990).

The evidence demonstrated that appellant had a poor history of financially supporting the child, and even failed to pay child support during part of the time he was seeking custody of the child. There was evidence of drug usage and domestic violence in the household, including some physical violence against the wife in the presence of the child. There was evidence that Gregory Young introduced Deborah Young to drugs (although he denied it) and allowed the use of drugs when the child was present.[3] The facts also suggested that appellant is controlling, aggressive, intemperate, combative, argumentative, and vindictive in nature. There was evidence that he lacked motivation to hold steady employment. When he was unemployed while his wife was working, he placed his daughter in day care rather than take care of her himself at home. There was testimony from individuals outside the marriage, as well as from Deborah Young, that Young tends to use physical intimidation and threats of harm to control others. The evidence suggested he lacked significant emotional maturity. He also saw nothing improper with taking unclothed showers with his then seven-year-old daughter, or letting her see him in the nude. The parties had difficulty communicating about the child. Finally, even during the course of the trial, appellant's reluctance to answer some questions created the impression he would be unwilling to assure access to the child by other parties in this case. The trial court could have concluded from the evidence that Mr. Young's primary motive in this litigation was to obtain a competitive victory, and that his desire to care for Samantha was less significant.

In *Rogers*, this court affirmed a third-party placement[4] where there was evidence that the husband frequently used drugs; possessed a violent temper which lead to assaulting the wife; had left the wife at a job interview, taking the child with him; and subsequently did not allow the wife to see the child. *Rogers*, 786 S.W.2d at 177. In affirming the placement, this court stated "[t]he evidence did not perhaps compel placing the child in the custody of a third person, but we will not under the evidence overturn the trial court's order as being unsupported by the evidence." *Id.*

In the instant case, the court made specific findings supported by the evidence that appellant allowed Deborah Young's use of drugs to involve the child and failed to take action to protect the child. The court also found that appellant did not see his wife's drug involvement in the home as a problem; that appellant committed domestic violence in the home; that appellant was unable to communicate effectively regarding the child; that appellant intimidated and threatened others in order to gain control; that appellant abandoned the

---

3. A note was introduced in evidence during Young's cross-examination. The note said, "Deb, This is what we can get for $200, an eight ball." Young admitted the note was in his handwriting, and was written in 1996, but he denied that the note was intended to be an encouragement to her concerning drugs. He said the note was "written in anger."

4. Custody was remanded to the trial court because the child's maternal grandmother, to whom physical custody had been granted by the decree, was not a party to the case.

responsibility of supporting the child until he found he could gain personal advantage by paying child support and marital bills;[5] and that appellant failed to pay child support even while asking for custody. In contrast to this evidence, there was very little positive evidence of Young's qualification to have custody of Samantha. The evidence supported a finding of unfitness and unsuitability.

## POINT IV

In his fourth point, appellant argues that the trial court erred in treating the non-parent, Saundra Rush, equally with the natural parents in considering custody. The underlying assumption to this argument is that while appellant's conduct might be offensive, it did not rise to the level of unfitness, unsuitability, or inability to act as custodian. He also argues that he had not endangered the welfare of the child. The statute, of course, does not require "endangerment of the welfare of the child." It merely requires that both parents be found unfit, unsuitable or unable to be a custodian, *or that the welfare of the child requires the transfer,* and that it be in the best interests of the child. § 452.375.5(5)(a). In addition, as previously discussed, the evidence does support a finding of unfitness and unsuitability. Finally, the statute, even as applied upon remand, does not treat the parents and the non-parent third-party the same because of the rebuttable presumption that the non-parent must overcome. Upon remand, the court made findings of fact to show that the non-parent carried her burden to overcome the rebuttable presumption, then found both parents to be unsuitable. Only then did the court make a

finding that the welfare of the child required placement with Rush.

## CONCLUSION

Appellant fails to preserve his constitutional claims. We decline plain error review of those claims. We conclude that the findings that both parents are unsuitable to serve as custodians, that the welfare of the child requires placement with Saundra Rush, and that it is in the best interest of the child to be placed with Saundra Rush, are supported by the evidence. Judgment is affirmed.

5. Appellant does argue that even if the allegations concerning child support were true, this is insufficient to deny custody because the child was being adequately cared for, citing *In the Interest of G.A.W.,* 867 S.W.2d 704 (Mo.App.1993). That case involved the Juvenile Officer seeking custody of the child under Section 211 rather than a determination of custody in a divorce proceeding, and is therefore inapplicable.