NO. 12-03-00018-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS




HERIBERTO ESTUPINAN LOPEZ,
§
 APPEAL FROM THE 367TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 DENTON COUNTY, TEXAS







MEMORANDUM OPINION


 Heriberto Estupinan Lopez ("Appellant") appeals his conviction for aggravated sexual
assault, for which he was sentenced to imprisonment for twenty-two years. Appellant raises three
issues on appeal. We affirm.


Background On April 14, 2002, the complainant, D.T., contacted police and claimed that she had been
sexually assaulted in her home. Lewisville police officer Jesus Flores ("Flores") was dispatched to
the scene and obtained a written description made by D.T. of her attacker. Flores and Officer
Richard Anders ("Anders") reviewed the description with other residents, and thereafter, sought to
contact Appellant at his residence. (1) After contacting Officer Eddie Barrett ("Barrett"), who
interviewed D.T. at the hospital, Flores, Anders, and Barrett went to Appellant's residence and
knocked on the door. Although at first there was no answer, Appellant later answered the door. 
Flores asked Appellant if the officers could enter. Appellant permitted the officers to enter,
motioning them inside.

 Once inside, the officers sought to question Appellant. (2) The officers first asked Appellant
if he had been in his residence, to which Appellant responded that he had been in his home drinking
with his four roommates, none of whom were present at the time the officers questioned Appellant. 
The officers next asked Appellant if he had any problems with any girls in the mobile home
community, to which Appellant responded that he did not have any such problems. 

 The officers asked Appellant for permission to take a Polaroid picture of him for use in a
photo lineup. Appellant did not object to their taking his picture. Appellant subsequently gave the
officers oral and written consent to search the premises. During the search, Flores discovered a knife
in the kitchen, which Appellant informed the officers he carried with him for protection. 

 Subsequently, Barrett asked Appellant if he was sure that he did not have any problems with
a girl in the community. Flores testified that, in response to Barrett's question, Appellant motioned
to Flores to step outside the residence with him, which Flores did. Once they were outside,
Appellant explained to Flores that he was having an affair with a married woman who lived in the
mobile home park. Appellant elaborated that he had gone to the woman's residence that morning
and had had intercourse with her. Afterwards, Appellant continued, the woman demanded money
from Appellant and told him that if he did not comply, she would "scream rape and tell her husband
what was going on." Appellant explained to Flores that he tried to leave the woman's house, but she
began to shove him. As the woman was shoving him, Appellant explained, the knife in Appellant's
pocket cut the woman through his pants. (3)

 After Appellant completed his explanation to Flores, the officers asked Appellant if he would
follow them in his own car to the police department to give a statement. Appellant told the officers
that he had no means of transportation, and preferred that the officers give him a ride to the police
department. Flores testified that he told Appellant, "[W]ell, you're not under arrest, we'll be happy
to give you a ride to the police department. (4) Appellant was not handcuffed at any time.

 Once at the police department, the officers provided Appellant with a voluntary statement
form, which contained a Spanish translation of Appellant's Miranda (5) warnings. Flores testified that
he orally reviewed the written Miranda warnings with Appellant and that Appellant indicated to
Flores that he understood the warnings. Flores testified that Appellant gave the written statement
freely and voluntarily. Appellant then made a written statement to police as to what had transpired
that day. After Flores and Appellant reviewed Appellant's written statement, and Appellant was
provided the opportunity to make any changes he deemed necessary, Barrett and Flores reviewed
Appellant's statement, and thereafter, sought to further converse with Appellant about some
perceived inaccuracies in his written statement. During the discussion, Barrett told Appellant that
it was time to tell the truth. Appellant responded that he had "screwed up," and sought to change
his written statement, which he was permitted to do on a new form. 

 In Appellant's second written statement, which also contained Miranda warnings, (6) Appellant
stated that he had been out of his house drinking heavily, and had become intoxicated. Noticing that
D.T.'s husband was leaving, Appellant entered D.T.'s home and attempted to have intercourse with
her. When D.T. resisted, Appellant threatened her at knife point and proceeded to have intercourse
with her. (7)

 Appellant was subsequently charged with aggravated sexual assault. During the ensuing jury
trial, a hearing was conducted on Appellant's motion to suppress the statements he made to police. 
The trial court overruled Appellant's motion to suppress. Ultimately, the jury found Appellant guilty
as charged and recommended punishment at imprisonment for twenty-two years and a fine of ten
thousand dollars. The trial court sentenced Appellant in accordance with the jury's recommendation,
and this appeal followed.


Motion to Suppress

 In his first issue, Appellant argues that the trial court erred in overruling his motion to
suppress. Specifically, Appellant argues that the statements Appellant gave in his home were a
product of custodial interrogation and that the officers (1) failed to comply with Texas Code of
Criminal Procedure article 38.22, section 3, inasmuch as Appellant's oral statements were not
electronically recorded, and (2) failed to issue Appellant his Miranda warnings. 

 We review a trial court's ruling on a motion to suppress for abuse of discretion. See
Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Curry v. State, 965 S.W.2d 32,
33 (Tex. App.-Houston [1st Dist.] 1998, no pet.). In reviewing the trial court's ruling, we apply a
bifurcated standard of review. See Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App.
2000); Hernandez v. State, 957 S.W.2d 851, 852 (Tex. Crim. App. 1998). We give almost total
deference to the trial court's determination of historical facts, while conducting a de novo review of
the trial court's application of the law to those facts. See Carmouche, 10 S.W.3d at 327. The trial
court is the exclusive finder of fact in a motion to suppress hearing, and as such, it may choose to
believe or disbelieve any or all of any witness's testimony. Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990). Furthermore, when, as in the instant case, "the trial court fails to file
findings of fact, we view the evidence in the light most favorable to the trial court's ruling and
assume that the trial court made implicit findings of fact that support its ruling as long as those
findings are supported by the record." State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). 
If the trial judge's decision is correct on any theory of law applicable to the case, the decision will
be sustained. Id. at 856.

 Neither the requirements of Article 38.22, section 3, nor the warnings required by Miranda
are applicable absent custodial interrogation. See Tex. Code Crim. Proc. Ann. art. 38.22 § 3(a)
(Vernon Supp. 2004); Miranda v. Arizona, 384 U.S. at 444, 86 S. Ct. at 1612. Questions of whether
an individual has been subjected to "custodial interrogation" under article 38.22 are to be construed
consistently with that term's meaning under the Fifth Amendment to the United States Constitution. 
See Wicker v. State, 740 S.W.2d 779, 785 (Tex. Crim. App. 1987); Anderson v. State, 787 S.W.2d
221, 227 (Tex. App.-Fort Worth 1990, no pet.). Under the Fifth Amendment, a person is in custody
when his freedom of action has been deprived in any significant way. Miranda, 384 U.S. at 444,
86 S. Ct. at 1612. This determination is to be made from the viewpoint of a reasonable person in the
defendant's position. See Anderson, 787 S.W.2d at 227 (citing Berkemer v. McCarty, 468 U.S. 420,
422, 104 S. Ct. 3138, 3151, 82 L. Ed. 2d 317 (1984)). The reasonable person standard presupposes
an innocent person. See Dowthitt v. State, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996).

 The Texas Court of Criminal Appeals has outlined at least four general situations which may
constitute custody: (1) when the suspect is physically deprived of his freedom of action in any
significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when
law enforcement officers create a situation that would lead a reasonable person to believe that his
freedom of movement has been significantly restricted, or (4) when there is probable cause to arrest
and law enforcement officers do not tell the suspect that he is free to leave. See Dowthitt, 931
S.W.2d at 255. Concerning the first, second, and third situations, the restriction upon freedom of
movement must amount to the degree associated with an arrest as opposed to an investigative
detention. Id. Concerning the fourth situation, the officers' knowledge of probable cause must be
manifested to the suspect. Id. Such manifestation could occur if information substantiating probable
cause is related by the officers to the suspect or by the suspect to the officers. Id. The fourth
scenario does not automatically establish custody. Id. Rather, custody is established if the
manifestation of probable cause, combined with other circumstances, would lead a reasonable person
to believe that he is under restraint to the degree associated with an arrest. Id.

 Here, based on our review of the record, and considering it in the light most favorable to the
trial court's ruling, we conclude that the restrictions placed upon Appellant's freedom of movement
did not amount to the degree associated with an arrest. At most, Appellant was under investigative
detention when the officers questioned him at his home, which does not constitute custodial
interrogation. See Anderson, 787 S.W.2d at 228. 

 The record reflects that Appellant motioned to Flores go outside on the porch to speak with
Appellant, and that Flores complied. Further, the officers asked Appellant to follow them in his own
car to the police department to give a statement. After Appellant told the officers that he had no
means of transportation, and preferred that the officers give him a ride to the police department,
Flores told Appellant, "[W]ell, you're not under arrest, we'll be happy to give you a ride to the police
department." Flores explained that if someone was in custody, he would not be given the
opportunity to drive his own car to give a statement. Finally, Appellant was not handcuffed at any
time. We hold that the statements made by Appellant at his home were not the product of custodial
interrogation. 

 Appellant also argues that subsequent statements, both oral and written, he made at the police
station were tainted by the illegality of the interrogation that took place at Appellant's home. 
Essentially, Appellant argues that a "domino effect" of illegality tainted all statements Appellant
made later that day. Appellant further argues that the oral statements he made at the police station
violated Article 38.22, section 3 as they were not electronically recorded. First, since we have
concluded that no custodial interrogation occurred at Appellant's home, there is no illegality by
which Appellant's subsequent statements could have become tainted. Second, Appellant has the
burden to prove that he was in custody. See Brown v. State, 725 S.W.2d 801, 806 (Tex.
App.-Austin 1987), judgm't vacated on other grounds, 761 S.W.2d 4 (Tex. Crim. App. 1988). In
his brief, Appellant's argument that he was in custody focuses solely on the officers' investigation
at Appellant's home. No argument is made by Appellant that he was in custody when he voluntarily
accompanied officers to the police station to give a statement. Thus, by neglecting to argue on
appeal whether he was in custody at the police station, Appellant has waived the issue on appeal. 
See Tex. R. App. P. 38.1(h). As such, we hold that the trial court did not abuse its discretion in
overruling Appellant's motion to suppress. Appellant's first issue is overruled. 


Ineffective Assistance of Counsel

 In his second and third issues, Appellant argues that his counsel provided ineffective
assistance during the punishment stage of trial in that he failed to object to certain statements made
by the prosecuting attorney during jury argument. Specifically, Appellant argues that the following
statement by the prosecuting attorney warranted objection by his trial counsel:


 [Defense Counsel] is a very good man. And I treasure him. But he mentioned the Bible.[ (8)] Okay. 
I'm mentioning the Bible to you. How about the book of Leviticus, chapter 62, verse 25? And please
don't get angry with me if you don't follow this; just listen to me. Where God says any man who
would force himself on a woman in a field when she cries out for help is deserving of - do you know
what the word is? - death. That's the word for a rape. That's the word for aggravated rape. That's
the punishment laid out in the Bible for aggravated rape.


 And I will tell you another thing, too. That was the punishment for aggravated rape a hundred years
ago and 50 years ago, and it's only until now that we get so, oh, we're just so touchy-feely, we're so
rehabilitation-oriented, we're so, oh but now we're going to make the punishment lighter and lighter. 
And you can see our society has certainly not improved.



Appellant further argues that the prosecuting attorney concluded his argument by alluding to the
death penalty as an appropriate punishment for aggravated sexual assault, suggesting that "the verdict
that should be in this case isn't even on the page."

 Claims of ineffective assistance of counsel are evaluated under the two-step analysis
articulated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 674 (1984). The
first step requires the appellant to demonstrate that trial counsel's representation fell below an
objective standard of reasonableness under prevailing professional norms. See Strickland, 466 U.S.
at 688, 104 S. Ct. at 2065. To satisfy this step, the appellant must identify the acts or omissions of
counsel alleged to be ineffective assistance and affirmatively prove that they fell below the
professional norm of reasonableness. See McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim.
App. 1996). The reviewing court will not find ineffectiveness by isolating any portion of trial
counsel's representation, but will judge the claim based on the totality of the representation. See
Strickland, 466 U.S. at 695, 104 S. Ct. at 2069.

 To satisfy the Strickland standard, the appellant is also required to show prejudice from the
deficient performance of his attorney. See Hernandez v. State, 988 S.W.2d 770, 772 (Tex. Crim.
App. 1999). To establish prejudice, an appellant must prove that but for counsel's deficient
performance, the result of the proceeding would have been different. See Strickland, 466 U.S. at
694, 104 S. Ct. at 2068.

 In any case considering the issue of ineffective assistance of counsel, we begin with the
strong presumption that counsel was effective. See Jackson v. State, 877 S.W.2d 768, 771 (Tex.
Crim. App. 1994). We must presume counsel's actions and decisions were reasonably professional
and were motivated by sound trial strategy. See id. Appellant has the burden of rebutting this
presumption by presenting evidence illustrating why his trial counsel did what he did. See id. 
Appellant cannot meet this burden if the record does not affirmatively support the claim. See
Jackson v. State, 973 S.W.2d 954, 955 (Tex. Crim. App. 1998) (inadequate record on direct appeal
to evaluate whether trial counsel provided ineffective assistance); Phetvongkham v. State, 841
S.W.2d 928, 932 (Tex. App.-Corpus Christi 1992, pet. ref'd, untimely filed) (inadequate record to
evaluate ineffective assistance claim); see also Beck v. State, 976 S.W.2d 265, 266 (Tex.
App.-Amarillo 1998, pet. ref'd) (inadequate record for ineffective assistance claim, citing numerous
other cases with inadequate records to support ineffective assistance claim). A record that
specifically focuses on the conduct of trial counsel is necessary for a proper evaluation of an
ineffectiveness claim. See Kemp v. State, 892 S.W.2d 112, 115 (Tex. App.-Houston [1st Dist.]
1994, pet. ref'd).

 In the case at hand, the record is silent as to the reasons underlying Appellant's counsel's
decision not to object to the jury argument of the prosecuting attorney. As such, Appellant cannot
overcome the strong presumption that his counsel performed effectively and, therefore, has not met
the first prong of Strickland because the record does not contain evidence concerning Appellant's
trial counsel's reasons for choosing the course he did. Thus, we decline to hold that Appellant's trial
counsel was ineffective. Appellant's second and third issues are overruled.


Conclusion

 Having overruled Appellant's issues one, two, and three, we affirm the trial court's
judgment.


 SAM GRIFFITH 

 Justice



Opinion delivered April 14, 2004.

Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.










(DO NOT PUBLISH)


1. Officer Aaron Sherwood was also present at the scene.
2. The record reflects that English is not Appellant's native tongue. Flores translated the questions asked to
Appellant into Spanish.
3. Flores testified that he never mentioned the subject of rape to Appellant at any time. 
4. Flores further testified that if someone was in custody, he would not be given the opportunity to drive his
own car to give a statement.
5. See Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).
6. The record reflects that Flores read through the form with Appellant.
7. Flores testified that Appellant stated that he threatened to kill D.T. if she refused to have intercourse with
him.
8. Defense counsel argued, "... remember, we look at the Bible, Jesus fell three times and he got up. The
same opportunity that this man and any one of us have to get up and show the people that we can do better ..."