Paul Jerry DeCLOUETTE, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–85–034–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 17, 1985.

Alvin M. Titus, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Winston E. Cochran, Jr. and Carol G. Davies, Asst. Dist. Attys., Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, Paul Jerry DeClouette, appeals from a judgment of conviction of the felony offense of aggravated rape of a child, enhanced by one prior felony conviction. The appellant entered a plea of not guilty. The jury found the appellant guilty and also found the enhancement allegation of the indictment true. Punishment was assessed at ninety-nine (99) years in the

Texas Department of Corrections. We affirm.

Appellant raises three grounds of error on appeal. The first ground of error alleges that the trial court erred by permitting the State to present evidence of extraneous offenses. The second ground of error alleges that the trial court erred by allowing a police officer to testify as to statements made by the appellant while in custody without the benefit of Miranda warnings. In the third and final ground of error, appellant alleges that reversible error resulted from an improper jury argument given by the prosecutor.

Appellant was charged with the aggravated rape of his ten year old daughter (complainant) which took place on August 15, 1983. Complainant was living with her natural mother and her stepfather when she was nine years old. One day the stepfather told complainant that he was not her real father, and complainant confronted her mother about this. In the spring of 1983, complainant's mother took her to visit the appellant, and left her with him for the weekend. The complainant testified that appellant was in a wheelchair all the time except when he was in bed. That night, complainant went to sleep on the floor, but appellant insisted that complainant sleep with him in the bed. While complainant was lying on the bed, the appellant fondled her. Complainant got out of the bed and slept on the floor. The appellant no longer molested her that night.

After this weekend, complainant began living with her grandmother during the week and visited the appellant on the weekends. The appellant's sexual advances resumed the next time complainant visited him. The appellant told the complainant to get in bed with him, and when she did the appellant removed her underwear and unsuccessfully attempted to place his penis in her vagina. Complainant testified that the appellant explained his actions as follows:

> ... he was trying to teach me the way to have sex, so that when I would have it, it wouldn't hurt me.

Complainant further testified that appellant tried to have sex more than one time. Finally, complainant's mother found out what was going on and she stopped the visits.

In June of 1983 complainant's mother became ill and was unable to care for her daughter. Consequently, complainant went to live with the appellant. Complainant did not want to go, however, she testified that the appellant promised that he would not touch her.

On the first night that the complainant spent at the appellant's apartment, the appellant, complainant, and another girl were sleeping on the floor. The appellant began fondling the complainant who cried and ran into another room. The other girl wanted to know what was wrong, but the complainant did not tell her. The next night the appellant made the other girl sleep in an adjoining room. The appellant pulled down the complainant's underwear and placed his penis partially inside her vagina. The next week the appellant again assaulted the complainant; this time he placed his penis completely inside her. This activity continued for several weeks, sometimes twice a day.

On the day alleged in the indictment, August 15, 1983, the appellant raped the complainant in the afternoon. That evening they visited the complainant's aunt. When the appellant returned to his car, complainant ran inside and told her aunt about the rape. The appellant drove off when the complainant's uncle was informed of the rape and went to confront appellant.

■ Appellant's first ground of error alleges that the trial court erred by permitting the State to present evidence of extraneous offenses. Generally, in Texas, evidence of extraneous offenses is inadmissible. *Albrecht v. State*, 486 S.W.2d 97 (Tex. Crim.App.1972). There are, however, a few exceptions to this rule. Many Texas cases have applied this exception to sex offenses committed against minors by their parents or others standing in the position of a parent. This is the express holding of

*Williams v. State,* 490 S.W.2d 604 (Tex. Crim.App.1973).

In *Johns v. State,* 155 Tex.Cr.R. 503, 236 S.W.2d 820, 823 (1951) the court said:

"In matters of incest or rape under the age of consent, it is often of importance to show the attitude between them and the relative size, age and strength of the parties, and if possible, to show how one in a position demanding care and guidance of a related person, has failed in such duty and has adopted an unnatural attitude relative thereto, and by fondling or otherwise, evidences a desire for sexual gratification toward such child or relative."

In *Veloz v. State,* 666 S.W.2d 581 (Tex.App. —Houston [1st Dist.] 1984) the Court held that the testimony of the victim and victim's aunt, concerning extraneous offenses committed by defendant against the victim was admissible to show the probability of the charged act. The facts of the *Veloz* case were similar to the instant case in that the appellant was the stepfather of the 14 year old victim and appellant was charged with sexual abuse of this child. The court in *Veloz v. State, supra,* also stated that their research had not disclosed a case involving a prosecution for a sex offense against a child victim in which an extraneous sex act with the same victim was held inadmissible. We agree and accordingly overrule the appellant's first ground of error.

Appellant's second ground of error alleges that the trial court erred by allowing a Colorado Springs, Colorado police officer to testify as to statements made by the appellant while in custody without the benefit of *Miranda* warnings. At some point after August 15, 1983, appellant left Houston, Texas and went to Colorado Springs. The Houston authorities contacted the Colorado Springs Police Department seeking their assistance to apprehend the appellant. Detective Aldridge testified that he was assigned to locate the appellant, a fugitive from Texas. The officer went to an address in Colorado Springs, Colorado and

was met by a man who identified himself as "Nekia DeCloudeta." Defense counsel objected that no further testimony about the officer's conversation with this person should be allowed. The Texas Code of Criminal Procedure states:

Sec. 3. (a) No oral or sign language statement of an accused made as a result of *custodial interrogation* shall be admissible against the accused in a criminal proceeding....

Tex.Crim.Proc.Code Ann. art. 38.22 § 3(a) (Vernon Supp.1985). We agree with the above statement of law, but we do not find that appellant was in custody at the time of questioning concerning his identity.

The officer's testimony was as follows: "I told him I did not believe he was Nekia DeCloudeta; that he was Paul Jerry DeClouette. And he stated no, it was his twin brother that we were looking for. I asked him if his twin brother also had a tatoo of a cross in the middle of his forehead. And he stated yes, he did."

It is obvious that the officer's goal was to locate the appellant, and that he was questioning "Nekia DeCloudeta" merely to determine whether he was really the appellant. This identification questioning was not "custodial interrogation" such as to require warnings as protection against self incrimination for two reasons. First, questioning to merely establish identification constitutes a minimal intrusion and is not "custodial." *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983). Furthermore, there is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the street. *Terry v. State of Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Second, the questioning was not designed to elicit an incriminating response (i.e. evidence tending to prove guilt). *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The statutory protection of Article 38.22§ 3(a) applies only to statements "made as a result of custodial interrogation." No warnings were necessary. Accordingly, we

overrule appellant's second ground of error.

In the third and final ground of error, appellant alleges that reversible error resulted from an improper jury argument by the prosecutor. The prosecutor twice argued that the appellant was merely putting on a show by appearing in the courtroom in a wheelchair. The prosecutor insinuated that the appellant was hoping to persuade the jury that he was physically incapable of committing the alleged offense. Appellant further alleges that by the following statements the prosecutor commented on his failure to testify.

In her closing argument to the jury in the guilt/innocence phase of the trial, the prosecutor commented as follows:

He (the appellant) has created an impression in this courtroom. He has come in and created an impression of the fact he's in a wheelchair with a blanket. What is that supposed to make you think in a case like this? That a crippled man couldn't have done it, that what the complainant said is physically impossible from a crippled man.

■ The prosecutor's argument quoted above was continued in the penalty phase of the trial:

(the appellant) will stoop to the sham of hiding behind the wheelchair when it suits his purposes. And I will say that when you want to consider what's on this pen packet—if he's willing to hide behind it when he's committing an offense in Harris County, Texas in 1983, why can't you also think that he's willing to hide behind it—might be willing to serve to his advantage when he's in prison?

In deciding whether these comments constitute reversible error, we are guided by the following rules. First, we must decide whether the statement is a comment on appellant's failure to testify, either because the language was manifestly intended to be such a comment or because the language is such that a jury would take it as a comment on appellant's failure to testify. *Short v. State*, 671 S.W.2d 888 (Tex.Crim. App.1984).

■ The statements were not a direct comment on the failure to testify. Comments by the prosecutor regarding appellant being confined to a wheelchair were harmless. The State proved their case by complainant's testimony along with other evidence. We find that the prosecutor's statement was not manifestly intended to comment on the failure to testify, therefore, we must determine if the comment is of such a character that the jury would "naturally and necessarily" take it to be a comment on the appellant's failure to testify.

Alleged argument error must be viewed in the context of the entire argument, keeping in mind the evidence presented and that isolated sentences taken out of context may take on meaning other than that understood by the jury. *Short v. State, supra*. Viewed in the context of the entire argument we find that the jury would not consider the prosecutor's statements to be a comment on appellant's failure to testify.

The comment in the instant case refers to appellant's physical condition as evidenced by appellant's appearance in the courtroom and complainant's testimony. Furthermore, the State presented evidence that appellant was observed while "shooting hoops" on two different occasions. The testimony elicited facts proving that on at least two occasions appellant was moving about without the aid of crutches or a wheelchair. Additionally, a Harris County Sheriff Department's deputy testified that he saw the appellant often during a period from May 1984 through mid-September 1984 and he testified that the appellant moved about under his own power. Clearly, there appears to be discrepancy in the extent of appellant's physical impairment.

Based upon the conflicting evidence concerning the extent of appellant's physical disability we feel that the prosecutor's argument was not error. There are four categories of permissible jury argument: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and

(4) plea for law enforcement. *Darden v. State*, 629 S.W.2d 46, 52 (Tex.Crim.App. 1982). We find that the prosecutor's remarks involving the appellant's physical condition are a reasonable deduction from the evidence.

The appellant further objects to the prosecutor's following remark:

"You'll look at the charge. And on the last page the very first line, you'll find Paul Jerry DeClouette guilty. You'll read the charging paragraph. It's all there. There is no other verdict you can come up with."

We find that this portion of the prosecutor's argument is a reasonable deduction from the evidence. *Darden v. State*, 629 S.W.2d 46 (Tex.Crim.App.1982). Furthermore, appellant did not object and therefore waived any error. *Hannah v. State*, 624 S.W.2d 750 (Tex.App.—Houston [14th Dist.] 1981) *pet. ref'd*, 632 S.W.2d 151 (Tex. Crim.App.1982). Appellant's third ground of error is overruled.

Accordingly, we affirm the judgment of the trial court.