Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
ROY JOE GIVENS,                                            )                  No. 08-03-00252-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  346th District Court
)
THE STATE OF TEXAS,                                   )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 930D10027)

O P I N I O N

            Roy Joe Givens appeals his conviction of indecency with a child. A jury found Appellant
guilty and assessed punishment at a fine of $10,000 and imprisonment for ten years. We affirm.
FACTUAL SUMMARY
            In 1991, fifteen-year-old Yadira Gandara and her mother, Beatrice Gandara, attended
St. Rafael Orthodox Church in El Paso, Texas. Appellant was introduced to them as “Father
Mathias” and he identified himself as an Orthodox priest. Due to her interest in art, Appellant asked
Yadira to work on the church bulletin. Beatrice and her friend Mona would drive Yadira to the
church and wait in the car while she worked. Eventually, Appellant discouraged Beatrice from
waiting in the car for Yadira. He said that she should trust him because he was a priest. 
            One evening in August of 1991, Yadira was at the church working on the bulletin when
Appellant came out of his office and asked her to take off her shoes and sit on a cot with him. 
Yadira felt uneasy but complied with his request. Appellant looked at Yadira and told her that they
had been chosen for a special mission from God. Placing his hands on hers and touching his feet to
her feet, he remarked that their hands and feet were the same size. He explained that this was an
indication that they were part of the same mission. He also showed her some rocks which he
claimed “were not from this earth.” Appellant and Yadira then sat “Indian style” while holding
hands and meditating. Appellant also prayed in a language which Yadira did not understand. 
Afterwards, Appellant asked Yadira what she had experienced. When she said that she had felt like
she was being elevated, Appellant told her that it was a test of her faith and obedience and she had
done well. Appellant instructed Yadira to lay down on the cot and she complied. He massaged her
back, untucked her blouse and unbuttoned her bra while telling her not to fight him. Appellant
fondled her breasts and then unbuttoned her jeans while massaging her stomach. When Appellant
noticed that Yadira was shaking, he told her that she needed to be obedient. Yadira felt helpless and
shocked that a “man of God” would do this to her. She remained frozen while Appellant touched
her. When Appellant asked whether she was enjoying him touching her, she told him no. After
awhile, Appellant got up and told her to that if she ever told anyone what he had done, his mission
would be over. He also threatened Yadira and her family. 
            Yadira attended church less frequently with her mother and ceased working on the church
bulletin. On several occasions, Appellant asked Yadira when she was going to return and he
reminded her that she had to be obedient. Beatrice noticed that Yadira did not want to attend church
but Yadira would not tell her why. In November of 1993, Beatrice attended a congregational
meeting to discuss allegations made by young women against Appellant. Afterwards, Yadira told
her mother that Appellant had molested her. 
            A grand jury indicted Appellant for indecency with a child. After being released on bond,
Appellant fled the jurisdiction. When Appellant did not appear for his arraignment on February 15,
1994, the trial court issued a capias for his arrest. Appellant was not arrested until January 22, 2003. 
Lieutenant Kenneth Fryman, Jr., the operational director of the Illinois Secretary of State Police,
received information regarding the fugitive warrant on January 21, 2003, and arrested Appellant at
his residence in Springfield, Illinois. 
ORAL STATEMENTS
            In two related issues, Appellant contends that the trial court abused its discretion by 
admitting oral statements which Appellant made to Lt. Fryman immediately prior to his arrest in
Illinois. Appellant argues in Issue One that the statements were inadmissible because they were
obtained in violation of his right to counsel guaranteed by the Sixth Amendment and Article I,
Section 10. In Issue Two, Appellant complains that Fryman did not first give him the Miranda



warnings.
            Lt. Fryman’s office received a request from the El Paso County Sheriff’s Department to pick
up a fugitive who was living in Springfield, Illinois. Fryman went to the residence where he spoke
with Appellant, who identified himself as Roy Givens. In order to verify his identity as the same
person named in the fugitive warrant, Fryman asked to see Appellant’s identification. Appellant did
not have a state identification card or other photo identification but he had a Social Security card
which showed his name as Roy J. Givens. Still unsure if Appellant were the same person named in
the warrant, Fryman asked Appellant if he had ever been to Texas. Appellant replied that he had not
but Fryman noticed that his hands began to tremble. Fryman could tell that Appellant had been
particularly affected by the question. Fryman then asked Appellant if he had a brother who lived in
El Paso. Appellant told Fryman that his brother lived in Austin, and contrary to his statement that
he had never been to Texas, he admitted that he had visited his brother. Fryman then told Appellant
he had an arrest warrant from Texas for “Roy J. Givens” for the offense of indecency with a child
and that he believed Appellant was the person named in the warrant. Fryman placed Appellant under
arrest. 
Right to Counsel
            Appellant argues that the oral statements should be suppressed because Fryman interrogated
him without his attorney present. The Sixth Amendment to the United States Constitution
guarantees that “[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the
Assistance of Counsel for his defence.” When an accused’s Sixth Amendment right to counsel
attaches to an offense for which adversarial proceedings have begun, he is entitled to the assistance
of counsel at each “critical stage” of the prosecution, absent a valid waiver. Upton v. State, 853
S.W.2d 548, 553 (Tex.Crim.App. 1993). Not every event following the inception of adversarial
judicial proceedings constitutes a “critical stage” so as to invoke the right to counsel under the Sixth
Amendment. Green v. State, 872 S.W.2d 717, 720 (Tex.Crim.App. 1994). A pretrial stage is
“critical” only if the accused requires aid in coping with legal problems or assistance in meeting his
adversary. See Green, 872 S.W.2d at 720. Post-indictment interrogation is a critical stage. See
Wesbrook v. State, 29 S.W.3d 103, 117 (Tex.Crim.App. 2000), citing Michigan v. Jackson, 475 U.S.
625, 106 S.Ct. 1404, 1408, 89 L.Ed.2d 631 (1986); United States v. Henry, 447 U.S. 264, 100 S.Ct.
2183, 65 L.Ed.2d 115 (1980); State v. Frye, 897 S.W.2d 324, 327 (Tex.Crim.App. 1995); Holloway
v. State, 780 S.W.2d 787, 793 (Tex.Crim.App. 1989). But not all questioning constitutes
interrogation. Jones v. State, 795 S.W.2d 171, 174 (Tex.Crim.App. 1990). Questioning “normally
attendant to arrest and custody” is not interrogation. McCambridge v. State, 712 S.W.2d 499, 505
(Tex.Crim.App. 1986), citing Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64
L.Ed.2d 297 (1980). Identification questioning does not constitute interrogation because it is not
designed to elicit an incriminating response, i.e., evidence tending to prove guilt. See DeClouette
v. State, 699 S.W.2d 341, 344 (Tex.App.--Houston [14th Dist.] 1985, pet. ref’d). 
            By his questions, Fryman sought to discover whether the Roy J. Givens standing before him
was the same Roy J. Givens named in the fugitive warrant out of Texas. This questioning is not
designed to elicit an incriminating response but rather is the type of questioning normally attendant
to arrest. Consequently, it not interrogation. See DeClouette, 699 S.W.2d at 344 (where police
officer, whose goal was to locate the defendant, went to an address and questioned an individual in
an effort to determine whether the individual was really the defendant was not “custodial
interrogation” because it was not designed to elicit an incriminating response). Because this type
of routine questioning is not a critical stage of the proceedings, Appellant’s right to counsel was not
violated. Issue One is overruled. 
Miranda Warnings
            In Issue Two, Appellant complains that his statements were inadmissible because he was not
given his Miranda warnings. At trial, Appellant objected to the admission of this evidence on the
sole ground that his Sixth Amendment right to counsel was violated. That objection does not
preserve his complaint on appeal regarding the absence of Miranda warnings. See Tex.R.App.P.
33.1; Santellan v. State, 939 S.W.2d 155, 171 (Tex.Crim.App. 1997)(To preserve error, a
defendant’s complaint on appeal must comport with the objection raised at trial.). Issue Two is
overruled.
EXTRANEOUS OFFENSE
            In Issues Three through Six, Appellant challenges the admission of evidence showing that
he was not ordained or otherwise officially recognized as a member of the clergy. Characterizing
this evidence as showing a bad act, namely, “false impersonation as a member of the clergy,”
Appellant contends that the evidence is irrelevant and substantially more prejudicial than probative. 
He also asserts that he did not receive notice of the State’s intent to introduce this extraneous bad
act.
            As a rule, an accused may not be tried for some collateral crime or for being a criminal
generally. Tex.R.Evid. 404(b); Williams v. State, 662 S.W.2d 344, 346 (Tex.Crim.App. 1983). In
the face of a proper objection, evidence of other crimes, wrongs, or acts is not admissible to prove
the character of the person to establish that he acted accordingly regarding the alleged offense.
Montgomery v. State, 810 S.W.2d 372, 386 (Tex.Crim.App. 1990); Lazcano v. State, 836 S.W.2d
654, 657 (Tex.App.--El Paso 1992, pet. ref’d). An extraneous offense is defined as any act of
misconduct, whether resulting in prosecution or not, that is not shown in the charging papers. Rankin
v. State, 953 S.W.2d 740, 741 (Tex.Crim.App. 1996). It is an offense that is “extra, beyond, or
foreign to the offense for which the party is on trial.” Manning v. State, 114 S.W.3d 922, 926-27
(Tex.Crim.App. 2003).
Preservation of Error
            The State first argues that Appellant failed to preserve his complaint for appellate review.
As a prerequisite to presenting a complaint for appellate review, the record must show that the
complaint was made to the trial court by a timely request, objection, or motion, and the trial court
ruled on the request, objection, or motion. Tex.R.App.P. 33.1(a)(1) and (2); Tucker v. State, 990
S.W.2d 261, 262 (Tex.Crim.App. 1999). A party must continue to object every time inadmissible
evidence is offered. Ethington v. State, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991); Gillum v. State,
888 S.W.2d 281, 285 (Tex.App.--El Paso 1994, pet. ref’d); Tex.R.App.P. 33.1. Error in the
admission of evidence is cured when the same evidence is admitted elsewhere without objection. 
Ethington, 819 S.W.2d at 858; Hudson v. State, 675 S.W.2d 507, 511 (Tex.Crim.App. 1984). There
are two exceptions to the requirement that a party object each and every time inadmissible evidence
is offered: (1) a running objection, or (2) an objection made outside the presence of the jury to all
the testimony he deemed objectionable as permitted by Rule 103(a)(1). See Ethington, 819 S.W.2d
at 858-59 (discussing similar provision in former Rule 52(a) of Rules of Appellate Procedure);
Gillum, 888 S.W.2d at 285.
            Detective Victor Portillo was the State’s first witness. After establishing that Portillo had
conducted an investigation into Yadira’s sexual abuse complaint against Appellant, the prosecutor
asked Portillo whether he had conducted an investigation into the existence or nonexistence of
credentials from any religious group. Appellant objected based on lack of Rule 404(b) notice,
relevance, and Rule 403. Finding that Appellant’s counsel had “opened the door” to admission of
evidence about Appellant’s credentials by referring in her opening statement to him as “Father
Mathias,” the court overruled Appellant’s objections. Appellant did not ask for a running objection
to this testimony. The prosecutor repeated his question whether Portillo had made an inquiry into
the Appellant’s credentials and Portillo replied that he had. The prosecutor then asked whether
Portillo had been able to confirm that Appellant had been ordained or otherwise granted authority
from any religious group to act as a priest, bishop, or father of any kind. Portillo replied, “As far as
we knew he was not.” Appellant did not object to the prosecutor’s question or Portillo’s answer. 
Appellant did not object to this testimony in a hearing held outside the presence of the jury nor did
he obtain a running objection. Therefore, he was required to continuously object to the testimony
he deemed inadmissible. Having failed to do so, Appellant did not preserve error. Issues Three,
Four, Five, and Six are overruled. The judgment of the trial court is affirmed.


December 16, 2004                                                     
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Panel No. 2
Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)